## Jones & Laughlin Steel Co. *v.* Wood & Co., Appellants.

*Sales—Warranty—Implied warranty — Damages — Measure of damages—Statement of claim—Demurrer.*

1. An implied warranty will arise if goods are purchased for a particular use of which the buyer informs the seller, and the rule is especially applicable where the seller is the manufacturer of the article sold.

2. The general rule is that a contracting party is liable for the damages which are the natural consequences of the breach, where the vendor undertakes to furnish an article for a certain specified use.

3. Where a manufacturer contracts to supply an article which he manufactures, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment of the manufacturer, the law implies a promise or undertaking on his part that such article is reasonably fit and proper for the purpose for which he professes to make it, and for breach of such warranty the seller will be liable for the damages which are the natural and probable consequences thereof.

4. Where in an action for the breach of an implied warranty that certain elbows or pipe-bends, furnished by defendants in connection with pumping apparatus which they were installing for plaintiff, should be fit for use in connection with certain piping, the statement of claim averred that defendants had guaranteed that the pipes should withstand a pressure of at least 250 pounds and that the elbows had been bought for use in connection with the pipes; that after the pipes and elbows had been encased in concrete the elbows burst at a pressure of 235 pounds, and that defendants thereupon furnished new elbows, but refused to remove the defective elbows and substitute therefor the new ones, and that plaintiff was thereupon compelled to do the work and sought to recover the cost thereof, the items of which were properly set forth, the court made no error in entering judgment for plaintiff on demurrer to the statement of claim.

5. In such case the contention that the defective elbows had been finally accepted and the entire transaction closed when they were cemented in the trenches is unsound, and particularly so in view of the fact that defendants recognized their failure to provide proper elbows under the contract and furnished new ones.

*Practice, Supreme Court—Assignments of error—Defective assignments.*

6. Assignments of error are not in proper form and will not be considered by the Supreme Court where they are in the language of the pleader and do not contain the judgment, decree, order, or finding or conclusions of law about which complaint is made.

Argued April 22, 1915. Appeal, No. 355, Jan. T., 1914, by defendants, from judgment of C. P. No. 4, Philadelphia Co., Dec. T., 1911, No. 417, for plaintiff, on demurrer to statement of claim, in case of Jones & Laughlin Steel Company, a corporation, v. George Wood, Walter Wood and Stuart Wood, surviving partners of the late firm of R. D. Wood and Company, composed of themselves and Richard Wood, now deceased. Before BROWN, C. J., ELKIN, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Assumpsit for breach of warranty.

On demurrer to the plaintiff's statement of claim AUDENRIED, J., filed the following opinion:

This action was brought for the recovery of the plaintiff's reasonable expenditures for labor and materials required in removing from the pumping plant at its works near Pittsburgh, certain cast iron elbows or bends which it had bought from the defendants and in substituting in their place the new elbows furnished by the defendants for that purpose.

The plaintiff bases its claim upon the ground that the defendants were bound by their contract to supply it with two elbows capable of sustaining a certain hydrostatic pressure; that those delivered did not comply with this requirement; and that although the defendants supplied others to take the place of the elbows orig-

inally furnished, they refused, when called upon to provide for removing the former and installing the latter. The letters, specifications and orders that made up the contract between the parties are incorporated in the statement of claim.

The defendants demur to the statement for the reasons that the writings alleged to set forth the contract sued upon contain no "guaranty" that the elbows called for would have the strength that the plaintiff avers they were to have; that these writings show no agreement by the defendants to answer for the consequential damages resulting to the plaintiff after its acceptance of the elbows from their defective quality; and that the facts averred imposed on the defendants no liability to the plaintiff. The demurrer, in our opinion, must be overruled. The reasons that lead us to this conclusion are as follows:

1. As to the objection that the contract contains no guaranty of the strength of the elbows to be delivered. It is true that no such stipulation is expressed in any of the writings that together evidence the agreement of the parties. In the absence of express words, however, a warranty may be implied. This is true even when the contract is reduced to writing and merely stipulates for the delivery of articles of a certain kind (Hare on Contracts, 533): If a thing be ordered of the manufacturer for a special purpose and it be supplied and sold for that purpose, there is an implied warranty that it is fit for that purpose: 1 Parsons on Contracts, 586-7; Port Carbon Iron Co. v. Groves, 68 Pa. 149. Where a manufacturer contracts to supply an article which he manufactures, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment of the manufacturer, the law implies a promise or undertaking on his part that the article so manufactured and sold by him for a specific purpose, and to be used in a particular way, is reasonably fit and proper for the purpose for which he professes to make it, and for which it is known

to be required: Seitz v. Brewers' Refrigerating Machine Co., 141 U. S. 510; Haines v. Young, 13 Pa. Superior Ct. 303. A brief summary of the plaintiff's averments on this part of the case will demonstrate, we think, that the facts averred suffice to sustain the claim that the defendants impliedly undertook that the two cast iron elbows which they agreed to deliver to the plaintiffs were to be of such a quality that they would not break under a pressure of less than 250 pounds to the square inch.

Wishing to provide a better water supply for its works the plaintiff ordered from the defendants, who are manufacturers of such articles, sundry pumps and motors; and these, with certain appurtenances in the shape of curved annular discharge piping, were to be installed by the defendants in the pumphouse of the plaintiff upon foundations prepared by the latter. In the defendants' specifications in relation to the apparatus that they agreed to furnish (which were incorporated by reference thereto in the plaintiff's written order) it was provided that, in order to insure sound castings and tight joints, the pumps should be tested to a hydrostatic pressure of 250 pounds before leaving the shop. The plaintiff subsequently ordered from the defendant 1,700 feet of 60-inch iron pipe, which the defendants "guaranteed 300 lbs. pressure." These pipes were intended to be used in connecting the plaintiff's pumping station with its works; and the pipe line was to be laid fourteen feet beneath the surface of the ground. To bring the water from the pumping apparatus into the pipes laid to convey it to its destination involved two deflections in its flow, one a downward turn at the ground level, the other a lateral turn at a point fourteen feet below. The plaintiff provided for this by ordering from the defendants, several months after the orders above referred to were given, two 60-inch cast iron elbows or bends. The order for them stated that each would be "subjected to a water pressure of 300 lbs, per square inch and accepted if it

shows no defect." The defendants were aware of the use to which the elbows were to be put, and that they were to be employed in connection with annular discharge piping tested to a pressure of 250 lbs. and the 60-inch pipes that they had guaranteed for 300 lbs. pressure. The order for the elbows specified their inside diameter, and the quality of the pig iron of which they were to be made, but was silent with respect to their thickness. There is nothing to show that "drawing Y. 10" referred to in the order indicated anything more than the positions which the elbows were intended to occupy respectively in the plaintiff's water supply system.

There is thus presented a case where a firm of manufacturers contracted to deliver elbows of their own manufacture to be used as part of a piping system which they knew was expected to sustain a hydrostatic pressure of at least 250 lbs., and where the buyer trusted to their judgment that the castings supplied were free from flaws and contained a sufficient weight of metal to give them the strength to do the work expected of them. We think that, in view of these circumstances, it was necessarily implied that the elbows to be furnished by the defendant were to be reasonably fit and proper for use under the conditions under which they knew the elbow would be used.

We are of the opinion that neither that clause of the order which reads, "After being coated each pipe will be subjected to a water pressure of 300 lbs. per square inch, and if it shows no defect will be accepted," nor the fact that before the bursting of one of the elbows the plaintiff had credited the defendants on its books with the contract price of the articles that they had delivered to it, stands in the way of the plaintiff's claim.

Payment by the purchaser of the price of the goods delivered to him does not relieve the vendor of his liability to respond in damages if it subsequently develops that they are not what they were warranted to be. The buy-

er of machinery may accept and pay for it and later recover from the seller damages for the breach of any warranty given by him in relation to it: Shoe v. Maerky, 35 Pa. Superior Ct. 270; Miller Lock Co. v. Diehl Mfg. Co., 37 Pa. Superior Ct. 585.

The making of the test referred to in that portion of the order for the elbows quoted above was a right reserved solely for the purchaser's benefit. It was mentioned merely by way of warning to the defendants, as their counsel frankly concedes. The plaintiff did not bind itself to make the test and the manufacturers had no right to rely on its being made for guidance in their actions. They were bound to deliver elbows of the strength required by the use to which it was known they were to be put whether the plaintiff tested them or not. The plaintiff might elect to waive its right to test the elbows, and rely wholly on the defendants' implied warranty of their strength and fitness. It was this course that it pursued.

2. As to the plaintiff's right to "consequential" damages because of the defendants' failure to deliver elbows of the requisite strength: It is argued on behalf of the defendants, that, if they were bound to supply the plaintiff with elbows that would stand a hydrostatic pressure of 250 pounds, the measure of its damages for their breach of contract would ordinarily have been the difference between the market value of what they delivered and the market value of the elbows they agreed to furnish; and that, as it appears that, with the consent of the plaintiff, they have substituted elbows of the required strength for those that prove to be defective, the plaintiff has sustained no loss. This argument overlooks the fact that the elbows ordered by the plaintiff were to fill particular places in its system of water supply, and that the defendants were informed of this by the plans in their possession. It is true that in most cases the damages for a breach of warranty are measured in the manner suggested by the defendants; but the general rule requires

that compensation shall be made by the party in default for all the injurious results of a breach of contract that may reasonably be supposed to have been in the contemplation of the parties at the time when the contract was made. Under this rule it is difficult to see how the plaintiff's claim for reimbursement of the cost of removing the defective elbows and of installing the substitutes in their place can be rejected. As remarked above, the position in which each of these elbows was to be used was known to both parties when the order for them was given. The difficulty of removing them from their positions and of installing others in their stead, should they break or prove to be defective after being put in place, must have been patent to both plaintiffs and defendants. Both parties knew well that if they broke they must be replaced by other elbows, or the whole water supply system would be useless. How can it be said under these circumstances, that they contemplated merely the cost of new elbows and failed to consider the cost of the labor and materials necessarily involved in making the change, as the natural consequence of the defendants' failure to deliver elbows such as they undertook to supply. Surely such an expenditure was a natural and probable consequence of the defendants' breach of contract, and is, therefore, recoverable.

3. The third objection of the defendants to the statement, as we understand it, simply sets forth in a slightly different manner their first and second grounds of demurrer; and, as we have already indicated our reasons for overruling the demurrer so far as it is based thereon, there is no occasion to say more under this head.

Other facts appear in the opinion of the Supreme Court.

The court overruled the demurrer and entered judgment for plaintiff for the amount of the claim. Defendants appealed.

*Error assigned,* among others, was the judgment of the court.

*Henry S. Drinker, Jr.,* with him *Abraham M. Beitler,* for appellants.

. *Wayne P. Rambo,* with him *Arthur F. Schneider* and *Benjamin Alexander,* for appellee.

OPINION BY MR. JUSTICE ELKIN, May 10, 1915:

Plaintiff sued in assumpsit for damages resulting from a breach of contract. In the statement of claim the entire contract between the parties, including drawings, specifications, correspondence, requirements, uses, terms and conditions, was fully set forth. What constituted the breach was also averred and the damage resulting as a necessary consequence of that breach was set out in an itemized statement made part of the declaration. The defendants demurred on the following grounds: (1) That the statement of claim did not show a valid cause of action in that the contract relied on to sustain a recovery did not contain a warranty that the defective elbows would stand a pressure of 300 pounds per square inch; (2) that under the contract defendants were not liable for the consequential damages caused by the bursting of the pipe-bends after the same had been accepted and installed by the plaintiff; (3) that under the facts averred in the declaration defendants are not indebted to the plaintiff in any sum whatever.

The demurrer admitted the facts properly pleaded, and hence we must accept as established, all the relevant facts averred in the statement. The pipe-bends, known as elbows, were a component and necessary part of the entire pumping equipment manufactured and installed by the defendants for a specified use, and this was the basis of the contractual relation of the parties. It is argued for appellants that the express guaranty of the discharging pipe did not apply to the elbows, which were

a necessary part of the equipment. As we view it, this contention is too technical to be convincing. It is true the elbows, and some of the other parts, were ordered at different times, but they formed a component part of the pumping equipment which would not have been complete without them. They were all furnished under a general plan which contemplated a completed pumping equipment, including the necessary discharge piping. The order for the elbows did not in terms require that they be subject to the same pressure as the discharge piping of which they formed a part, but the only reasonable inference to be drawn from the entire transaction is that the parties intended the elbows to withstand the same pressure. This was the conclusion of the learned court below and in our opinion it was amply justified not only by what the parties agreed should be done but by what they did. The first elbows furnished by appellants were defective, and this fact is not denied; indeed it is conceded that the first elbows did not meet the requirements of the contract and appellants when notified of the defects undertook to make them good by furnishing new ones. This controversy grows out of what happened after the new elbows had been furnished. The defective elbows had been built into the system of discharge piping which was concreted in deep trenches, and it became necessary to dig out the elbows first delivered and put in the new ones. This was a difficult undertaking and defendants were notified to install the new elbows which they refused or neglected to do. Plaintiff then proceeded to install the new elbows at the cost of appellants which they refused to pay. The actual expense of taking out the defective elbows and installing the new ones is all that is demanded in the present action. The amount claimed is not controverted—the defense being that there is no liability because there was no guaranty. This defense ignores what appellants assumed their liability to be when they furnished the new elbows to take the place of the defective ones. If

they had performed the covenants of their contract when the first elbows were installed, why furnish new ones to take their place? The first elbows did not stand the pressure to which they were intended to be subjected, having broken under the strain, and appellants recognizing their liability agreed to and did furnish new ones. If there was any doubt about the meaning of the contract, what the parties did in performing the covenants thereof should resolve that doubt in favor of the construction which appellants themselves recognized as the measure of their liability. An implied warranty will arise if goods are purchased for a particular use, of which the buyer informs the seller, and the rule is especially applicable where the seller is the manufacturer of the article sold: 35 Cyc. 399. We entirely agree with the views expressed in the opinion of the learned court below not only upon the question of an implied warranty but on the other branches of the case.

The second ground of demurrer states as a fact that which does not appear in the record. It may be conceded that there was no express agreement to pay damages caused by the bursting of the pipe-bends, but no such damages are claimed in this action. In the declaration plaintiff simply seeks to recover the actual expense of taking out the defective elbows and installing the new ones which appellants furnished to take their place. In the facts averred it does not appear that the defective elbows "had been accepted and installed by plaintiff," or that anything had been done to indicate that the elbows had been tested and finally accepted. Indeed it is expressly averred in the declaration that the bursting of the discharge piping and elbows, "was due entirely to defendants' failure to supply elbows and annular discharge piping in accordance with the terms of said order and contract, and which defendants undertook to supply to withstand a pressure of 300 pounds to the square inch, as to said elbows, and 250 pounds pressure per square inch as to said annular discharge piping." There is

some doubt whether the pressure test of the elbows was to be 250 or 300 pounds per square inch, but this is immaterial because it is averred as a fact and not denied, that the highest pressure to which the elbows were subjected did not exceed 235 pounds per square inch. It is futile to argue that the defective elbows had been finally accepted and the entire transaction closed when they were cemented in the trenches, because after all this had been done appellants recognized their failure to provide proper elbows under the contract and did furnish new ones to take their place.

We entirely agree with learned counsel for appellee that the right to recover damages in this case does not depend upon an express agreement to pay damages. The general rule is that a contracting party is liable for the damages, which are the natural consequences of the breach, where the vendor undertakes to furnish an article for a certain specified use. Our own cases as well as those from other jurisdictions furnish ample authority to support this rule as a measure of damages where the facts warrant its application. See Wade v. Haycock, 25 Pa. 382; Port Carbon Iron Co. v. Groves, 68 Pa. 149; Erie City Iron Works v. Barber, 102 Pa. 156; Smith v. Citizens Gas & Gaseous Fuel Co., 5 W. N. C. 97; Philadelphia & Reading Coal & Iron Co. v. Hoffman, 1 Sadler, 405; Haines v. Young, 13 Pa. Superior Ct. 303; Boston Woven Hose & Rubber Co. v. Kendall, 178 Mass. 232; 35 Cyc. 234.

In the case at bar the expense of taking out the defective elbows and installing the new ones furnished by appellants to take their place was the direct and natural consequence of the breach of the contract. We cannot conceive of any more direct and natural consequence of the breach than the expense incurred in taking out the defective elbows and installing the new ones for the very purpose of completing the pumping equipment according to contract.

The learned court below gave this case such careful

and painstaking consideration that little of value can be added to the discussion of the facts and principles of law involved.

The first, third, fourth, fifth and sixth assignments of error are not in proper form and need be given no further consideration. All of these assignments are in the language of the pleader, and do not contain the judgment, or decree, or order, or finding, or conclusion of law, about which complaint is made. We have had occasion in several recent cases to call this matter to the attention of counsel so that more care may be exercised in assigning errors for the consideration of this court.

Judgment affirmed.