**DELTA TANK MANUFACTURING COMPANY, Inc.,**
and
**General Accident Fire and Life Assurance Corporation, Ltd., Plaintiffs,**
v.
**The WEATHERHEAD COMPANY, Defendant.**

**Civ. A. No. 29828.**

United States District Court
N. D. Ohio, E. D.
April 4, 1957.

Donald M. Marshman, Cleveland, Ohio, John F. Naulty, Philadelphia, Pa., for plaintiffs.

Frank Hurd, Burns Weston, McConnell, Blackmore, Cory & Burke, Cleveland, Ohio, for defendant.

WEICK, District Judge.

This is an action to recover $12,500 damages for the breach of an implied warranty of fitness in the sale of a gas regulator, which was defective and caused an explosion.

Jurisdiction of the Court was based on diversity of citizenship.

A jury was waived and the case was tried by the Court.

The court considered the pleadings, the stipulations of the parties, the testimony and deposition of Robert C. Weast, the deposition of Louis B. Courtot, the answers to the interrogatories, arguments and briefs of counsel.

The regulator in question was of the general design used in the industry and had been purchased by The Weatherhead Company, an Ohio corporation of Cleveland from the manufacturer, American Meter Company of Erie, Pennsylvania. The purchase of the regulator was made for the purpose of resale by Weatherhead to Delta Tank Manufacturing Co., Inc., a dealer which in turn sold it for installation to the ultimate consumer.

The order from Weatherhead to American directed that American ship the regulator direct to Delta at its place of business in East Baton Rouge Parish, Louisiana.

The regulator was ultimately installed on the property of William Jeff Sorrell in Saca, Alabama. Its function was to reduce the pressure of propane gas from the gas tank to the house. The regulator was defective.

Because of the defect in the regulator, an explosion occurred inflicting substantial damage to the home of Sorrell. He brought an action to recover for such damage from Delta and its insurer in

the United States District Court for the Eastern District of Louisiana.

Delta and its insurer paid Sorrell $12,500 in settlement of the action and then brought an action against American in the United States District Court for the Eastern District of Pennsylvania seeking indemnification therefor on the ground that American was negligent both in the manufacture and design of the regulator.

American paid Delta and its insurer $3,000 in settlement of the action as consideration for which they executed and delivered to American an instrument denominated a covenant not to sue and then instituted the present action against Weatherhead in this Court.

Weatherhead, in the second defense in its amended answer, pleaded the settlement made by Delta and its insurer with American as a bar to this action.

The covenant not to sue contained the following indemnity provisions:

"It is further agreed and understood that Delta Tank Manufacturing Co., Inc. and the General Accident Fire and Life Assurance Corporation Ltd., and their respective successors and assigns will defend, indemnify and save harmless any loss, claims, suits, expenses or damages, including any claims or suits by Weatherhead Company or any other person or organization, by reason of the liability imposed by law on American Meter Company for damages because of bodily injuries sustained by any person or on account of damage to property arising out of the aforementioned accident from any cause whatsoever including the negligence of the American Meter Company."

There is a possible conflicts of law question in this case.

While counsel for both parties claim that the law of Pennsylvania governs, they also cite cases dealing with the law of Ohio, Louisiana and Alabama.

■ The law of Alabama, which was the lex loci delicti, undoubtedly governed in determining the right of action of William Jeff Sorrell against Delta and its insurer. 15 C.J.S., Conflict of Laws, § 12a(1), p. 896.

It was the state where the last event necessary to make Delta liable to Sorrell took place. Restatement, Conflicts of Law § 377.

■ The sale of the regulator by American to Weatherhead was on an order which was accepted and performed in the State of Pennsylvania. The law of Pennsylvania would govern in determining the validity of the contract of sale and the nature and extent of the implied warranty in connection therewith. Alropa Corp. v. Kirchwehm, 1941, 138 Ohio St. 30, 31, 33 N.E.2d 655; Thrift Wholesale, Inc., v. Malkin-Illion Corp., D.C.E.D.Pa.1943, 50 F.Supp. 998; Sadler Machinery Co. v. Ohio National, Inc., D.C.N.D.Ohio, W.D.1952, 102 F. Supp. 652.

■■ Delta had purchased the regulator from Weatherhead on an order which was accepted by Weatherhead in Ohio and the terms of shipment were F.O.B. Cleveland, Ohio. The law of Ohio would, therefore, apply in determining the validity of the sale made by Weatherhead to Delta and the implied warranty in connection therewith. The law of the forum (Ohio) would, of course, apply as to the remedy. Alropa Corp. v. Kirchwehm, supra.

In any event, there appears to be no substantial difference between the law of Ohio and Pennsylvania in respect of the matters in issue so that it would be immaterial which law is applied.

In Pennsylvania there is an implied warranty of fitness in connection with the sale. 69 Purdon's Statutes, §§ 123, 124.[1] The Uniform Sales Act, which was in force in Ohio, contains provisions which would apply such a warranty in the case at bar. Revised Code of Ohio § 1315.16; Jones & Laughlin Steel Co.

1. Now 12A P.S. §§ 2-313 to 2-315, 2-317.

v. Woods & Co., 249 Pa. 423, 94 A. 1067; Rodgers v. Niles, 11 Ohio St. 48.

■ Weatherhead was liable to Delta for breach of the implied warranty of fitness as there was no question here that the regulator was defective and not fit for the purpose for which it had been manufactured and sold.

There was no claim in the complaint that Weatherhead was in any manner negligent nor was there any proof of its negligence. All Weatherhead did was to order the regulator from American to complete its sale to Delta and American shipped the regulator direct to Delta. Weatherhead did not even have an opportunity to inspect the regulator. Weatherhead's liability to Delta was solely one imposed by law.

If Delta and its insurer had not made the settlement with American, there would be no question that judgment would have to be entered in their favor against Weatherhead.

The only question in this case is whether the settlement made by Delta and its insurer with American bars recovery against Weatherhead.

American was the designer and manufacturer of the regulator.

The regulator was defective. The sole cause of the explosion and the damage to the home of William Jeff Sorrell was the defective regulator.

■ American was not only the primary wrongdoer, but it was the sole and only wrongdoer. It was directly liable to Delta for all the damage it sustained. MacPherson v. Buick Motor Car Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696; Foley v. Pittsburgh Des Moines Co., 363 Pa. 1, 68 A.2d 517; Birdsong v. General Motors Corp., D.C. E.D.Pa.1951, 99 F.Supp. 163. Delta asserted such liability in the action it filed against American and collected therefor.

■ Weatherhead, having purchased the regulator from American for resale, had the benefit of the same implied warranty of fitness as existed in favor of Delta.

■ As between Weatherhead and American, the latter was primarily liable to Delta and was obligated to indemnify Weatherhead from all damages sustained as a result of breach of the implied warranty of fitness. If American were within the jurisdiction of this Court, it could have been subjected to the third-party procedure provided by Rule 14 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

■ The distinction between primary and secondary liability is recognized both in Ohio and Pennsylvania. Where an injured party effects a settlement with the primary wrongdoer, such settlement effectively bars further recovery against the party secondarily liable. It makes no difference whether the rights against the secondary party were expressly reserved or whether the settlement was in part payment only of the claims or whether the settlement was accomplished by a legal instrument denominated covenant not to sue or a release. Bello v. City of Cleveland, 106 Ohio St. 94, 138 N.E. 526; Herron v. City of Youngstown, 136 Ohio St. 190, 24 N.E.2d 708; Larson v. Cleveland R. Co., 142 Ohio St. 20, 50 N.E.2d 163; Globe Indemnity Co. v. Schmitt, 142 Ohio St. 595, 53 N.E.2d 790; Builders Supply Co. v. McCabe, 366 Pa. 322, 77 A.2d 368, 24 A.L.R.2d 319; Caplan v. City of Pittsburgh, 375 Pa. 268, 100 A.2d 380.

■ Delta and its insurer claim that the doctrine of primary-secondary liability has application only to negligence cases and ought not to be extended to an action in contract like the one at bar, which involves a claim for breach of an implied warranty of fitness. We can see no valid reason for any such distinction.

The fact is that Delta and its insurer sued American for reimbursement alleging *negligence* in the design and manufacture of the regulator. They collected $3,000 from American as consideration for the execution of an instrument which not only effectively relieved American of further liability to them, but indemnified American from the very li-

ability which would be imposed on American in the event recovery is allowed here.

If recovery were allowed here, American would be liable for reimbursement to Weatherhead and American could in turn collect from Delta on the indemnity agreement in the covenant not to sue. The circle would then be complete.

Under the circumstances it makes no difference what label is applied to the instrument, which was for all practical purposes a combination of a release and an indemnity agreement. Caplan v. City of Pittsburgh, supra; Bello v. City of Cleveland, supra; Herron v. City of Youngstown, supra.

The settlement operated as a bar to recovery.

This memorandum is adopted as findings of fact and conclusions of law. Judgment may be entered for the defendant.