ROBINS M. WITHERBEE and EMMET J. GRAY, Respondents, *v.* AUBREY E. MEYER, Appellant.

1. DAMAGES FOR FAILURE TO SUPPLY POWER FOR MILL—REDUCED RENTAL VALUE. The measure of damages for breach of a contract to furnish water power to run a grist mill in proper and efficient manner is the difference between the rental value of the mill and machinery with the power contracted for and its rental value with the power actually furnished.

2. GENERAL RULE AS TO DAMAGES—CONDITIONS. The general rule that a party injured is entitled to recover all of his damages, including gains prevented as well as losses sustained, is subject always to two conditions: *First*, that the damages shall be such as must have been fairly within the contemplation of the parties to the contract at the time it was made; and, *second*, they must be certain, not only in their nature, but as respects the cause from which they proceed.

3. EXCLUDING PROFITS IN ESTIMATING DAMAGES—REASONS FOR. The grounds upon which is founded the general rule of excluding profits in estimating damages are: (1) That in the greater number of cases such profits are too dependent upon numerous and changing contingencies to constitute a distinct and trustworthy measure of damages; (2) because such loss of profits is ordinarily remote and not the direct and immediate

result of a non-fulfillment of the contract; (3) the engagement to pay such loss of profits in cases of default in performance does not form a part of the contract, nor can it be said from its nature and terms that it was within the contemplation of the parties.

4. LOSS OF PROFITS OF MILL EXCLUDED FROM DAMAGES. Gains prevented and losses sustained by breach of contract to furnish sufficient power for a grist mill cannot be included in damages for the breach of contract, in the absence of any collateral agreement the loss of profits from which was within the contemplation of the parties, or of any other fact to take the case out of the general rule which limits damages in such cases to the loss of rental value.

*Witherbee* v. *Meyer*, 84 Hun, 146, reversed.

(Argued March 8, 1898; decided April 19, 1898.)

APPEAL from a judgment of the late General Term of the Supreme Court in the third judicial department, entered October 4, 1894, affirming a judgment in favor of plaintiffs entered upon the report of a referee.

This action was brought to recover damages for breach of contract and to compel specific performance.

The facts, so far as material, are stated in the opinion.

*J. Sandford Potter* for appellant. The evidence received on the question of damages was incompetent, and the rule of damages adopted by the referee was erroneous. (*Smith* v. *Coudry*, 17 Pet. 20; Wood's Mayne on Dam. [1st Am. ed.] 36; *Fox* v. *Harding*, 7 Cush. 576; *White* v. *Miller*, 71 N. Y. 133; *Masterton* v. *Mayor, etc.*, 7 Hill, 61; *Messmore* v. *N. Y. S. & L. Co., etc.*, 40 N. Y. 422; *Bagley* v. *Smith*, 10 N. Y. 489; *Taylor* v. *Bradley*, 39 N. Y. 145; *Washburn* v. *Hubbard*, 6 Lans. 11; *Wakeman* v. *W. & W. M. Co.*, 101 N. Y. 205; *Freeman* v. *Clute*, 3 Barb. 424; *Davis* v. *Talcott*, 14 Barb. 611.)

*Joseph Potter* for respondents. The language of the conveyances, leases and instruments put in evidence, denoting the heirs and assigns of the parties to them, the object, intention and conduct of the contracting parties, and of the subsequent owners and occupants, constitute a covenant running with the land and create the relation of dominant and servient

estates and possessing the elements of both privity of contract and privity of estate. (*Van Horne* v. *Crain*, 1 Paige, 455; *Trustees of Watertown* v. *Cowen*, 4 Paige, 510; *Hills* v. *Miller*, 3 Paige, 254; *Nye* v. *Hoyle*, 120 N. Y. 201; *Norman* v. *Wells*, 17 Wend. 136; *Holmes* v. *Buckley*, L. R. [1 Eq. Cas.] 155; *Hart* v. *Lyon*, 90 N. Y. 663; *P. Ins. Co.* v. *C. Ins. Co.*, 87 N. Y. 400; *Cooke* v. *Chilcote*, 18 Eng. Rep. 694; *Whitney* v. *Richardson*, 59 Hun, 601.) The judgment in a former action, in favor of plaintiffs and against defendant, put in evidence by the respondents, being between the same parties and upon the same rights and obligations, the court having jurisdiction of the subject-matter and of the parties, by personal service of the summons, is conclusive of the controversy in this action and estops the defendant from disputing the plaintiffs' rights or the defendant's duties and obligations to supply the water and apply the power. (*Pray* v. *Hegeman*, 98 N. Y. 354; *Embury* v. *Conner*, 3 N. Y. 522; *Dunham* v. *Bower*, 77 N. Y. 76; *Davis* v. *Talcot*, 12 N. Y. 184; *Bedlam* v. *Springsteen*, 41 Hun, 160; *Sheldon* v. *Edwards*, 35 N. Y. 279: *Verplanck* v. *Van Buren*, 76 N. Y. 247; *Binck* v. *Wood*, 43 Barb. 316; *Newton* v. *Hook*, 48 N. Y. 676.) The rule of damages for breach of contract, other than to pay money and for failure to convey title when prevented for certain reasons, is that of compensation for gains prevented and losses sustained by the party to the contract. (1 Sutherland on Damages, 130, § 2; *Wakeman* v. *W. & W. M. Co.*, 101 N. Y. 205; *Masterton* v. *Mayor, etc.*, 7 Hill, 61; *Bagley* v. *Smith*, 10 N. Y. 489; *Taylor* v. *Bradley*, 39 N. Y. 129; *Schell* v. *Plumb*, 55 N. Y. 592; *Dickinson* v. *Hart*, 142 N. Y. 183; *Crittenden* v. *Johnston*, 7 App. Div. 258; *Dennis* v. *Maxfield*, 10 Allen, 138; *Shepherd* v. *M. G. L. Co.*, 15 Wis. 318; *Holden* v. *Lake Co.*, 53 N. H. 552.)

PARKER, Ch. J. The only question presented on this review is whether the referee adopted a correct rule of damages. The plaintiffs were awarded damages in the sum of $3,119.50,

because of the defendant's failure to perform, as he had obli-
gated himself to do, the agreement of his predecessor in title
to furnish sufficient water power to run and operate the shaft-
ing, gearing, millstones, machines and machinery contained in
a certain grist mill, then the property of the Whitehall Water
Power Company.    The amount of water power actually
afforded to the plaintiffs was twelve horse, whereas, according
to the testimony of a professional engineer and millwright,
from 35 to 38 horse power was required to run the mill in a
proper and efficient manner.    Evidence indicating that it was
the plaintiffs' hope to be able to show gains prevented and
losses sustained was offered, but in spite of the skill which the
learned counsel for the plaintiffs displayed in marshaling the
few facts within his reach, the result was most inconclusive
and unsatisfactory.    So much so, that it may safely be said
that this case furnishes still another illustration of the wisdom
which led to the adoption of the general rule that in cases of
this character the measure of damages is the difference between
the rental value of the mill and machinery with the power
contracted for, and its rental value with the power actually
furnished.

The respondents urge that *Wakeman* v. *W. & W. Manufac-
turing Company* (101 N. Y. 205) justifies the course taken by
the plaintiffs in their attempt to prove damages.    We think
otherwise, and will consider that case further when attention
shall have been called to the authorities which determine that
in such cases as this the difference in rental value constitutes
the proper measure of damages.

The general rule is, of course, as stated by the learned coun-
sel for the respondents, that the party injured is entitled to
recover all of his damages, including gains prevented as well
as losses sustained, but this rule is subject always to two
conditions:

*First*, that the damages shall be such as must have been
fairly within the contemplation of the parties to the contract
at the time it was made; and,

*Second*, they must be certain, not only in their nature, but

as respects the cause from which they proceed, for the law wisely adopts that mode of estimating damages which is most definite and certain.

In *Freeman* v. *Clute* (3 Barb. 424) there was a contract to construct a steam engine, to be used in the process of manufacturing oil. The engine was not delivered within the time agreed upon, and damages were claimed for delay in furnishing it. The injured party urged that in arriving at the amount of damages there should be ascertained the amount of business which could have been done by the aid of the engine and the profits that would have accrued therefrom, but the court held that this was not a proper measure of damages; that compensation should be allowed for the loss of the use of plaintiffs' mill and their machinery, which was afterwards interpreted to mean the fair rent or hire of the mill and machinery.

In *Griffin* v. *Colver* (16 N. Y. 489) the defendant failed to deliver on a certain day, as he had contracted to do, a steam engine to be used in driving a planing mill and its machinery. It was held that the ordinary rent or hire which could have been obtained for the use of the machinery, the operation of which was suspended for want of the steam engine, constituted a proper measure of damages, and the court, through Judge SELDEN, said: "The rent of a mill or other similar property, the price which should be paid for the charter of a steamboat, or the use of machinery, etc., etc., are not only susceptible of more exact and definite proof, but in a majority of cases would, I think, be found to be a more accurate measure of the damages actually sustained in the class of cases referred to, considering the contingencies and hazards attending the prosecution of most kinds of business, than any estimate of anticipated profits; just as the ordinary rate of interest is upon the whole a more accurate measure of the damages sustained in consequence of the non-payment of a debt than any speculative profit which the creditor might expect to realize from the use of the money." So, in *Rogers* v. *Bemus* (69 Pa. St. 432) the plaintiff agreed to erect a sawmill within a specified time. He failed to do so, and in an action on the

contract it was held that the defendant's damages were the rental value of the mill from the time fixed in the contract for its completion until the mill was completed; that he was not entitled to probable profits which might have resulted from the manufacture of lumber, because too remote, contingent and speculative.

*Pennypacker* v. *Jones* (106 Pa. St. 237) was a case where the plaintiffs, who owned and operated a flour mill in Philadelphia, entered into a contract with the defendants, by the terms of which the defendants were to place in their mill, within the specified time, machinery of a certain capacity to make flour of a high grade. The machines when finished were found not to make a high grade of flour, and to be incapable of producing the stipulated number of barrels per day. In an action for damages by the plaintiffs for breach of contract, it was held that loss of possible profits which might have been made, if the mill had been run properly, was not a proper subject of damages, for the reason that such damages were too remote and speculative. Mr. Justice GREEN, in delivering the opinion of the court, said: "But when a machinist furnishes machinery to a millowner, it is no part of his engagement that a profitable business shall be carried on with the machinery furnished. Of course, if it is defective, he is responsible for the damage resulting directly from such defect; but that is a very different thing from the uncertain, remote and speculative profits which may or may not be made in the business to be done."

*Cassidy* v. *Le Fevre* (45 N. Y. 562) is a well-considered case which has often, and very recently, together with *Griffin* v. *Colver* (*supra*), been cited with approval in this state. There, the defendant purchased from the plaintiff an engine, boilers and other machinery. The agreement provided that the engine and boilers should be of the best material and workmanship and in perfect running order. After the delivery the boilers were found to be defective; one of them collapsed at the first trial and was rendered useless. The defects in the boilers were subsequently supplied by the plaintiff, and in an

action for the purchase price it was held that the defendant was entitled to recoup the damages sustained. The defendant gave, however, no evidence of the value of the use or hire of the machinery which stood still during the time the boilers were being repaired, but instead gave evidence to show how much more and how much better cloth he could have made during the time if he had had the use of the boilers. The referee found that the plaintiff was not liable for these latter damages, and judgment was given upon this report for the plaintiff for the purchase price and interest. In considering the claim of the defendant to recover the increased earnings which might have been obtained with aid of the machinery over and above that which was actually earned without it, this court said : " This, within well-settled principles, was not the measure of damages ; they are quite too contingent and partake of the character of unearned profits. They depend upon circumstances entirely independent of the contract, and the particular thing, the object of the contract, upon contingencies connected with and affecting the general business of the parties rather than the use and the value of the use of the engine and machinery for the time."

This court further on, after commenting upon the absence of evidence, from which the referee could have determined the difference in the rental value of defendant's mill and machinery, with or without the steam engine and boilers, said : " Had there been such evidence, the ruling of the referee that the plaintiff was not liable to defendants for damages for the loss of the use of the engine, boilers and other machinery, would have been erroneous. But the ruling and decision was based upon the evidence, and the claim as made, and was in conformity to the decision of the courts of this state, and well-settled rules as to the measure of damages in like cases."

In *Manhattan Stamping Works* v. *Koehler* (45 Hun, 150) the defendants leased a manufactory to the plaintiff with all steam power needed by the plaintiff in its business. The steam power furnished was inadequate. The court held, Presiding Justice VAN BRUNT writing the opinion, that the plain-

tiff was not entitled to recover damages for the destruction of material by reason of the unevenness of the power, nor for profits which might have resulted had the power furnished been as agreed, but that a recovery for the ordinary rent or hire of the machinery during the time of this deficiency of power, could have been recovered had the complaint made claim for damages on that ground.

In *Rochester L. Company* v. *Stiles & P. P. Company* (135 N. Y. 209) the court, after asserting the general rule that one party shall recover all the damages which has been occasioned by a breach of the contract by the other party, said: " But this rule is modified in its application by two others: The damages must flow directly and naturally from the breach of the contract, and they must be certain, both in their nature and in respect of the cause from which they proceeded. Under this latter rule speculative, contingent and remote damages which cannot be directly traced to the breach complained of are excluded. Under the former rule such damages only are allowed as the parties may fairly be supposed when they made the contract to have contemplated as naturally following its violation." Citing *Griffin* v. *Colver* and *Cassidy* v. *Le Fevre* (*supra*).

The grounds upon which is founded the general rule of excluding profits in estimating damages, are (1) that in the greater number of cases such profits are too dependent upon numerous and changing contingencies to constitute a definite and trustworthy measure of damages ; (2) because such loss of profits is ordinarily remote and not the direct and immediate result of a non-fulfillment of the contract; (3) the engagement to pay such loss of profits, in cases of default in performance, does not form a part of the contract nor can it be said, from its nature and terms, that it was within the contemplation of the parties. Cases arise, however, in which loss of profits is said to be clearly within the contemplation of the parties, although not provided by the terms of the contract, and where such profits are not open to the objection of uncertainty or remoteness. An instance of the latter kind is where

the contract is entered into for the purpose, in part at least, of enabling the party to fulfill a collateral agreement from which profits would arise, of the existence of which he informed the other party prior to the making of the contract. In such cases the loss of profits from the collateral agreement is clearly within the contemplation of the parties, and is not remote or speculative.

No such agreement existed in this case. There was, indeed, present no fact to take it outside the general rule which declares that the measure of damages in such cases is the difference between the rental value of the mill and water power as furnished and the mill and water power as it would have been had the contract been performed. The case of *Wakeman* v. *W. & W. Manfg. Co.* (*supra*) is relied upon by the respondents' counsel to support this judgment.

*Wakeman's* case was one in which the rule controlling this case could not have been made applicable — a rule established in cases of this character, because the damages measured by it are not only within the contemplation of the parties, but are more definite and certain than would be possible by any other method of ascertaining damages. Wakeman and the W. & W. Manufacturing Company entered into a contract, by which the defendant agreed that if the plaintiffs should succeed in selling fifty of the defendant's sewing machines to one firm or party in Mexico, during a trip of their agent about to be made, for every fifty machines so sold they should have the sole agency for the selling of said machines in that locality, and the defendant agreed to furnish the machines. Plaintiffs' agent made two sales of fifty machines to persons in different localities in Mexico under an agreement that the purchaser should be the sole agent for the sale of machines in that locality. One of the orders the defendant filled, the other it refused, and refused to fill other orders from the plaintiffs or their agents and repudiated the contract. The defendant insisted that the only damages that the plaintiffs could recover were for a refusal to fill the orders actually given. Of course argument was not needful to make it appear that the loss of

profits on fifty machines actually sold would in no wise com-
pensate plaintiffs for the breach of the contract. In that
situation the plaintiffs undertook to show that they were pre-
vented from making profits which were within the contempla-
tion of the parties at the time they made the agreement, and,
as tending in that direction, they offered to prove upon the
trial that, subsequent to the repudiation of the agreement,
the defendant established agencies in Mexico and a number
of machines were sold through them. This evidence was
excluded, and for that error the judgment was reversed, the
court holding that prospective profits, so far as they could be
properly proven, and which would certainly have been realized
but for defendant's default, are allowable as damages although
the amount is uncertain, and that the evidence offered by the
plaintiffs, which the court excluded, tended in that direction.

But the *Wakeman* case was in no wise intended to encroach
upon the rule of damages applicable to cases of this character,
by which is afforded a more certain and definite method of
admeasuring the damages. It belongs to a different class, to
which the rule of this case cannot be made applicable, and the
doctrine of it must be limited in its application to ·cases that
come fairly within it.

The judgment should be reversed and a new trial granted,
with costs to abide the event.

All concur.

Judgment reversed, etc.