515 So.2d 372 (1987)
RONLEE, INC., Appellant,
v.
ARVIDA CORPORATION, Appellee.
RONLEE, INC., Appellant,
v.
ARVIDA CORPORATION and Badgett Resources, Appellees.
Nos. 4-86-2015, 87-0278.
District Court of Appeal of Florida, Fourth District.
November 12, 1987.
David H. Charlip, of Barranco, Kellough, Kircher & Charlip, P.A., Miami, for appellant.
Robert E. Ferris, Jr., of Gustafson, Stephens, Ferris, Forman & Hall, P.A., Fort Lauderdale, for appellee Arvida Corp.
GLICKSTEIN, Judge.
This is an appeal from a final judgment on Arvida's counterclaim and granting Arvida its attorney's fee against the plaintiff/counterdefendant. We affirm.
We are grateful for the findings of fact and conclusions of law herein. Although we do not repeat them all, paragraph three recites:
3. As to the Counterclaim for damages filed by ARVIDA against RONLEE *373 for failing to perform its Contract by not excavating to a depth of 40 feet and for reimbursement to ARVIDA for the fill left at the bottom of the lake, I find in favor of ARVIDA and against RONLEE. Both RONLEE and ARVIDA hired engineering firms to sound the depth of the lake after excavation ceased in order to reconcile the royalty which was owed to ARVIDA. In both cases, the engineering firms stated that had RONLEE excavated to a minimum water depth of 40 feet that [sic] approximately 1,773,700 cubic yards of fill would have been removed. Both engineering firms reflect that approximately 310,000 cubic yards of fill was not excavated from this lake. RONLEE disagrees with the survey results stating that these results do not reflect the lower limits of excavation which it has consistently claimed were to a minimum of 40 feet of water depth. Jose Fernandez, a former Vice President, stated in his testimony that RONLEE excavated to a minimum water depth of 40 feet and in fact, he stated that in Exhibit 19, a letter he sent to Walter Collins, the Vice President of Arvida. Assuming the testimony of RONLEE to be correct, then, if it had excavated to a minimum water depth of 40 feet it would have paid a royalty of .50 a cubic yard based upon 1,773,700 cubic yards having been excavated from this lake; however, it paid royalties on only approximately 1,463,700 cubic yards of fill leaving approximately 310,000 cubic yards of fill unpaid for.
The court awarded the amount of royalties that Arvida would have received if the excavation had been to the proper depth.
There is a presumption of the correctness of the trial court's findings of fact and conclusions of law. E.g., Taylor Creek Village Association v. Houghton, 349 So.2d 1219 (Fla. 3d DCA 1977). It is appellant's duty to show reversible error clearly on the record, and if appellant fails to meet this burden the conclusion must be that there is no error. E.g., Strate v. Strate, 328 So.2d 29 (Fla. 3d DCA), cert. denied, 336 So.2d 1184 (Fla. 1976). We do not think appellant here has met its burden. On the contrary, the court's conclusion that Ronlee failed to carry out its obligation under the contract is supported by competent substantial evidence.
As for Arvida's damages, appellee calls attention to the principle of Florida law received from the vaunted opinion in Hadley v. Baxendale, 9 Exch. 341 (156 Eng.Rep. 145) (1854), setting the measure of consequential damages as the actual loss resulting naturally from the breach of contract, or the damages within the contemplation of the parties at the time the contract was made. See also, Life Investors Insurance Co. of America v. Johnson, 422 So.2d 32 (Fla. 4th DCA 1982). Arvida also cites foreign case law which applies the measure of damages used here. Ronlee is correct in saying those cases involve lack of due diligence in working a mine, where the lease or other contract required it. Nevertheless, it appears to us that it was a reasonable expectation of Arvida that it would realize royalties on the entire volume of material that the contract required to be excavated. The expert witnesses for both parties agreed it is uneconomic to go back in with a dragline now and recover the material left at lake bottom. We think the royalty that would have been received on that material is a fair measure of damages. As appellee says, this represents the position in which Arvida would have been had not Ronlee breached this provision of the contract. See, e.g., Popwell v. Abel, 226 So.2d 418, 422 (Fla. 4th DCA 1969) (guiding principle in determining proper elements of damage in breach of contract action is placing injured party in as advantageous a position as he would have occupied had there been no breach).
Finally, we reject Ronlee's contention that Arvida's lawyers are bound by the $100 per hour agreement they had with their client. Legitimate reasons exist for allowing fees against an adversary which are greater than the client's obligation to pay. Two examples of a disadvantaged client are the wife without funds caught up in a contested dissolution with her breadwinner husband or a materialman working *374 out of a pickup truck attempting to collect from a developer operating out of a stretch limousine. The disadvantaged lawyer is another legitimate reason for not restricting the fee. Many a lawyer views the corporate client as the bird in the hand and works for a smaller hourly rate than otherwise because of the continuity of the relationship. The adversary should not be able to exploit the lawyer's willingness to take less from an ongoing client in order to know from where the rent cometh.
Perhaps the most unique jurist in America's history was Oliver Wendell Holmes, in that his life revealed both combat courage and moral courage  two separate and distinct human virtues, as so wisely observed by Garry Trudeau. Justice Holmes observed also that experience is the life of the law. It should come as no surprise that our conclusion on this issue has been forged by experience, as are developments in all areas of law.
DELL, J., concurs.
STONE, J., concurs with opinion.
STONE, Judge, concurring.
I agree that lost profits was the proper measure of damages. This is the measure which was most likely reasonably contemplated under the agreement, and it is clear that mitigation, by further dredging, was not reasonably feasible.
With respect to attorney's fees, the trial court correctly considered the requirements of Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985), and Alston v. Sundeck Products, Inc., 498 So.2d 493 (Fla. 4th DCA 1986). The trial judge specifically stated that he had considered those cases, together with the factors set forth in, what was then, the Code of Professional Responsibility. The prevailing attorney had an agreement with Arvida to accept a fee based on a rate of $100.00 per hour. There was testimony that a reasonable hourly rate was $175.00. The trial court awarded a fee based on an hourly rate of $150.00. In Alston, this court stated:
We recognize that the existence of a fixed fee arrangement is an important factor to be considered, since such an arrangement will usually constitute the best evidence of the reasonable value of the attorney's services. However, under Rowe the trial court is not absolutely bound to simply apply the agreement to determine the fee to be awarded. Cf. Bosem v. Bosem, 279 So.2d 863 (Fla. 1973).
Id. at 495. I therefore concur because it appears that the trial court did give due consideration to the fee agreement in arriving at the judgment in this case.