MIAMI HEART INSTITUTE, INC., a
not-for-profit Florida corporation,
Plaintiff,

v.

HEERY ARCHITECTS AND ENGI-
NEERS, INC., f/k/a Heery & Heery Ar-
chitects and Engineers, Inc., a foreign
corporation, Defendant.

No. 88–1714–CIV–DAVIS.

United States District Court,
S.D. Florida.

June 7, 1991.

Kelly Drye & Warren, Miami, Fla., for plaintiff; Robert W. Wells, Ignacio E. Sanchez, of counsel.

Walton Lantaff Schroeder & Carson, Miami, Fla., for defendant; David K. Tharp, Patrick J. Toomey, of counsel.

---

## MEMORANDUM OF DECISION AND ORDER

MISHLER, District Judge.*

Plaintiff, Miami Heart Institute, Inc. ("Miami Heart"), moved *in limine* to preclude defendant, Heery Architects and Engineers, Inc. ("Heery") from introducing certain testimony regarding the design and contingency clause in the contract between the parties. At oral argument on the motion immediately prior to jury selection, the question arose as to the proper measure of Miami Heart's damages for breach of contract, particularly the measure for loss of use from delay, assuming Miami Heart can establish Heery's liability. Counsel have been afforded the opportunity to brief this issue and have submitted memoranda of law.

## BACKGROUND

Miami Heart claims a breach of the contract dated October 31, 1980 in the alleged errors and omissions of Heery in its submission of plans and specifications for constructing a building known as the Base and Tower Building (the "New Building").

The project for constructing the New Building included the demolition of the existing Mastronardi Building, which was occupied by Miami Heart patients, and which would serve as the base for the New Building. Patients were transferred from the Mastronardi Building to other buildings on the premises, the Fruehauf, Storer, and Surgical buildings (collectively the "Old Buildings"), as a temporary measure awaiting the completion of the New Building. The Old Buildings were to be demolished upon completion of the New Building.

Construction on the New Building started in December 1981. The contract included a schedule of construction, with a completion date in November 1983. A certificate of occupancy was issued by the City of Miami Beach on September 19, 1984. Miami Heart claims that the delay in the issuance of the certificate of occupancy was caused by Heery's failure to draw plans and specifications in accordance with the Health and Rehabilitative Services ("HRS") hospital code and the City of Miami Beach building code.[1] Miami Heart seeks as damages the loss of use of the New Building for the period of delay (i.e. November 1983 to September 19, 1984), the additional architectural/design expenses and out-of-sequence construction costs incurred in modifying the New Building due to Heery's alleged errors and omissions ("Second Costs"), and the delay damage claims Miami Heart paid to contractors and subcontractors as a direct result of Heery's breach.

The issue now before this court is the proper measure for Miami Heart's "loss of use" of the New Building for the period of delay.

## DISCUSSION

■ Miami Heart argues that the proper measure for loss of use of the New Building during the delay period is the fair rental value of the New Building during that period. Heery submits that Miami Heart's damages must be limited to out-of-pocket expenses it incurred by reason of Heery's breach.

It is axiomatic that damages in a breach of contract action are awarded to place the plaintiff in the position he would have occupied had the contract been fully performed. *Juvenile Diabetes Research Found. v. Rievman*, 370 So.2d 33, 35 (Fla. 3d DCA 1979) (citing *Hodges v. A.P. Fries & Co.*, 34 Fla. 63, 69, 15 So. 682, 684 (1894)); *Burger King Corp. v. Mason*, 710 F.2d 1480, 1494 (11th Cir.1983), *cert. denied*, 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984). To be recoverable, such damages must arise naturally from the breach, or have been within the contemplation of the parties at the time they made the contract, as the probable result of the breach. *Hobbley v. Sears, Roebuck & Co.*, 450 So.2d 332, 333 (Fla. 1st DCA 1984) (citing *Hadley v. Baxendale*, 9 Exch. 341, 156 Eng.Rep. 145

---

\* United States District Court for the Eastern District of New York, sitting by designation.

**1.** The New Building failed the inspections of the HRS and the City of Miami Beach because, among other things, it did not comply with HRS code requirements for smoke containment and electrical wiring, and the Miami Beach code requirements for smoke ejectment.

(1854)); *Ronlee, Inc. v. Arvida Corp.*, 515 So.2d 372, 373 (Fla. 4th DCA 1987).

Miami Heart allegedly was delayed ten months in beginning its operations in the New Building because Heery's errors and omissions had to be remedied. Miami Heart lost the use of the New Building during this period of delay, though it was able to continue its operations in the Old Buildings during this period.

■ When the owner loses the use of a structure because of delay in its completion, he is entitled to damages measured by the reasonable rental value of the structure during the period of delay. *Russo v. Heil Constr., Inc.*, 549 So.2d 676, 677 (Fla. 5th DCA 1989); *Vanater v. Tom Lilly Constr.*, 483 So.2d 506, 508 (Fla. 4th DCA 1986) (reversing trial court's improper limitation of recovery to the cost to cure the defects); *Marshall v. Karl F. Schultz, Inc.*, 438 So.2d 533, 534 (Fla. 2d DCA 1983) (citing 5 Corbin on Contracts § 1092 (1964)). "During this period the owner is being deprived of the use of property, and rental value is used as a practical and a reasonably accurate measure of just compensation." 5 Corbin on Contracts § 1092. The rental value of the improvement during the period of delay, rather than the actual expense incurred in renting a substitute during the delay period, is the proper measure for delay damages. *Russo*, 549 So.2d at 677 (reversing trial court's delay damage calculation based on the cost plaintiff incurred in renting a substitute during the delay period).[2]

■ Rental value as the measure for loss of use "does not at all depend upon the fact that the owner expected to rent the property after its completion or upon the fact that prospective hirers or tenants could have been found." 5 Corbin on Contracts § 1092; Restatement of Contracts § 346(1)(b), comment c (Rental value is the

ordinary measure for loss of use from delay "even though the use expected to be made ... was not the rent of it to others and even though some other use of it might have resulted in a different return.") "It is enough that the property is of such a character that its rental valuation, that is, the market value of its use, can be established with reasonable certainty by expert testimony." 5 Corbin on Contracts § 1092.

■ Heery's contention that the hornbook rule of reasonable rental value applies only when the *builder's* errors cause delay and not when the delay is caused by architectural or engineering errors is without merit. It is true that the extra costs incurred in modifying a building because of an architect's defective plans may differ from those chargeable to a builder in remedying his errors.[3] However, the measure of the owner's damages for delay is the same whether the delay is caused by the errors of the builder, the architect, the engineer, or any other tradesman with whom the owner has contracted for construction of the building. There is no reason in logic or policy why the calculation of plaintiff's delay damages should depend upon the particular trade or profession of the party causing the delay.

Heery also asserts that *Young v. Johnston*, 475 So.2d 1309 (Fla. 1st DCA 1985), precludes recovery for loss of rental value. In *Young*, the purchaser of a home which was never constructed sued the builder for breach of contract. The court held that the trial court was correct in denying recovery for rental expense the plaintiff incurred during his continued occupancy of his old residence, because such expense would have been incurred regardless of the breach of contract. *Id.*, 475 So.2d at 1315. *Young* stands for the simple proposition that the plaintiff may not recover for expenses it would have incurred regardless of

---

**2.** *Russo* rebuts Heery's contention that loss of use is limited to out-of-pocket expenses caused by the delay.

**3.** For example, Heery's architectural plans called for two feet of electrical wire but proper plans would have required twelve feet of wire, Miami Heart's expense in purchasing the addi-

tional ten feet of wire cannot properly be charged to Heery because Miami Heart would have incurred this expense regardless of Heery's defective plans. See Lochrane Engineering, Inc. v. Willingham Realgrowth Investment Fund, Ltd., 552 So.2d 228, 232–33 and n. 8 (Fla. 5th DCA 1989) review denied, 563 So.2d 631 (1990).

the breach. *Young* did not address damages for loss of use. In *Young*, the building was never built. Loss of use of the new building from delay, therefore, was not a claimed element of damages. Further, the court found that the contract was not enforceable because it lacked mutuality of obligation. *Young*, 475 So.2d at 1312–13. The plaintiff therefore was not entitled to the normal damages of placing him in the position he would have occupied had the contract been fully performed ("loss of bargain" damages). *Id. Young* does not conflict with the hornbook law that loss of use of a structure from delay in its completion is measured by the reasonable rental value of the structure during the period of delay. *Russo*, 549 So.2d at 677; *Vanater*, 483 So.2d at 508; *Marshall*, 438 So.2d at 534; 5 Corbin on Contracts § 1092.

It is clear that reasonable rental value is the proper measure for the owner's loss of use of a structure from delay in its completion. In the instant case, however, Miami Heart was able to continue operations in the Old Buildings during the period of delay in completion of the New Building. It was able to mitigate its loss of use damages by continuing its use of its existing Old Buildings during the delay period. During this period, therefore, Miami Heart was not denied use of a hospital building. Rather, Miami Heart lost the use of a *newer and better* hospital building during the delay period.[4]

---

**4.** Further, the plans for renovation of Miami Heart's hospital facilities relate the New Building to the Old Building. The Mastronardi Building was occupied by Miami Heart patients before the renovation project commenced. The plans called for patients to be transferred from the Mastronardi Buildings to the adjacent Old Buildings (Fruehauf, Storer, and Surgical Buildings) as a temporary measure while the New Building was constructed on the base of the demolished Mastronardi Building. After completion of the New Building, the patients were to be transferred from the Old Buildings to the New Building, and the Old Buildings were to be demolished, with the area to be used as hospital grounds. The plan related all the buildings to one another, and both parties contemplated that Miami Heart could continue its operations in the Old Buildings until completion of the New Building. Miami Heart's damages for loss of use of the New Building for the ten months of the delay in its completion cannot be viewed in isolation of and without regard to its continued use of the Old Buildings during that period.

We believe that the proper measure of Miami Heart's loss of use of the newer building during the delay period is the *difference* in the reasonable rental value of New Building and the Old Buildings during that period. Allowing the offset for the fair rental value of the Old Buildings during the delay period reflects the use of the Old Buildings during that period.[5] The difference in fair rental value of the two buildings during the delay period measures Miami Heart's loss of use of the newer building during that period.[6]

## CONCLUSION

Miami Heart's damages for loss of use of the New Building during the period of delay is measured by the difference in the reasonable rental value of the New Building and the Old Buildings during that period. Miami Heart may also recover the "Second Costs" incurred in correcting Heery's errors and omissions, as defined in the Order dated January 4, 1991, and the amount of delay damage claims it paid to contractors and subcontractors as a direct result of Heery's breach.

DONE AND ORDERED.

---

**5.** As discussed above, fair rental value is a proper measure for loss of use even though the actual use is other than renting out the property. 5 Corbin on Contracts § 1092; Restatement of Contracts § 346(1)(b), comment c. That Miami Heart did not actually rent out the Old Buildings during that period, and would not have rented out the New Building during that period, is of no moment.

**6.** In *Witherbee v. Meyer*, 155 N.Y. 446, 50 N.E. 58 (1898), the defendant contracted to furnish water power to operate the plaintiff's mill. However, the amount of water power actually furnished (the "old mill") was less than what was contracted for (the "new mill"). The court held that the measure of the plaintiff's damages for loss of use was the difference between the rental value of the mill with the power contracted for and its rental value with the power actually furnished.