SAMUEL M. WEISS, PLAINTIFF-RESPONDENT, v. REVENUE BUILDING AND LOAN ASSOCIATION, DEFENDANT-APPELLANT.

Submitted October 25, 1935—Decided January 31, 1936.

For the appellant, *Schotland & Schotland.*

For the respondent, *Samuel Schwartz.*

The opinion of the court was delivered by

HEHER, J. Plaintiff sued to recover damages claimed to have been the proximate result of defendant's breach of an undertaking to lease to him the building designated as numbers 22-24 West Kinney street, in the city of Newark, and was awarded a verdict for a substantial sum by the jury impanelled to try the issue. From the consequent judgment, defendant appeals.

The decisive question is whether the trial judge, in certain rulings on evidence and in his instructions, applied the correct principle for the admeasurement of the damages. Defendant denied the asserted breach, but none of the challenged rulings relates to that issue.

These are the essential facts: On January 30th, 1934, defendant, by an indenture, leased to plaintiff, "for rooming house purposes," the adjoining building, Nos. 26-28 West Kinney street, and the equipment therein contained, for a term of three years from the ensuing February 1st, and, by a separate instrument delivered contemporaneously, granted to plaintiff an option, to be exercised within the period beginning April 1st and ending April 3d, 1934, to lease the building first mentioned upon identic terms and conditions. These buildings each contained fifty-six rooms. Plaintiff took possession of the building thus leased, and devoted it to the business authorized by the lease. He exercised the option to lease the adjoining building within time, but defendant did not perform.

The rule of damages applied by the trial judge was "the difference between the actual value of the leasehold estate that should have been enjoyed by the plaintiff, and the agreed rental." More specifically, the jury were instructed that the plaintiff was entitled to recover "the value of his term," and that, in the appraisement, it was proper to "consider the use to which the property may be most advantageously put," and

that, while the plaintiff was not entitled to an award of "those profits that he would have earned for the entire term," they were permitted, if not indeed required, to "consider what it is probable that this property would earn in determining what the term was worth to him."

In these instructions, and, by the same reasoning, in the related rulings on evidence to be adverted to hereafter, the trial judge fell into error.

Ordinarily, the *prima facie* measure of damages for the breach of a contract is the *quantum* of loss consequent thereon. The injured party is entitled to the value of the contract to him. It was this that he lost by the default of the other. *Feldman* v. *Jacob Branfman & Son, Inc.,* 111 *N. J. L.* 37. But this general rule is subject to two qualifications designed to confine within reasonable limits the appraisement of the consequences of the default, viz.: First, the damages shall be those arising naturally, *i. e.,* according to the usual course of things, from the breach of the contract, or such as may fairly and reasonably be supposed to have been in the contemplation of the parties to the contract at the time it was made, as the probable result of the breach; and, second, they must be the reasonably certain and definite consequences of the breach, as distinguished from mere quantitative uncertainty. *Wolcott* v. *Mount,* 38 *Id.* 496; *United States* v. *Behan,* 110 *U. S.* 338; 28 *L. Ed.* 168; *Witherbee* v. *Meyer,* 155 *N. Y.* 446; 50 *N. E. Rep.* 58; *Wakeman* v. *Wheeler and Wilson Manufacturing Co.,* 101 *N. Y.* 205; 4 *N. E. Rep.* 264; *Hadley* v. *Baxendale,* 9 *Exch.* 341; 23 *L. J. Exch.* 179; 18 *Jur.* 358; 5 *Eng. Rul. Cas.* 502. This general principle seems to have had its genesis in the last cited case. There Baron Alderson declared that if special circumstances attending the making of the contract were communicated by the party asserting the breach to the one charged therewith, the reasonably contemplated damages resulting from the breach "would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated;" *per contra,* if the special circumstances were wholly unknown to the party guilty of the breach, he "could only be supposed to have had in his contemplation the amount

of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such a breach of contract." This doctrine is grounded upon the right of the parties to make special provision for the damages in the event of a breach of a contract made under exceptional circumstances.

This is likewise the formula for the assessment of the damages ensuing from a breach of a contract to lease. In *McCulloch* v. *Lake & Risley Co.,* 91 *N. J. L.* 381, Mr. Justice Swayze, speaking for our Supreme Court, declared it to be the settled rule that "the lessee is entitled to recover at least the value of his term." He expressed approval of the principle enunciated in *Neal* v. *Jefferson,* 212 *Mass.* 517; 99 *N. E. Rep.* 334: "Where a lessor has prevented the lessee from entering and occupying the leased premises, or where an owner of property has broken his agreement to give a lease thereof to a prospective tenant, the measure of damages in an action for this breach of contract, if no rent has been paid and if nothing further appears, is the difference between the actual value of the leasehold estate that should have been enjoyed and the agreed rental that was to have been paid therefor." But, in the ascertainment of the value of the term, the apposite rule, in the absence of special circumstances, is the difference between the actual rental value and the rent reserved. Compare *Drischman* v. *McManemin,* 68 *N. J. L.* 337; *Cooper* v. *Aiello,* 93 *Id.* 336; *Ocean City Co.* v. *Johnstone,* 110 *Id.* 596; *Smith* v. *Hughey,* 66 *Or.* 408; 134 *Pac. Rep.* 781; *Wyula Cattle Co.* v. *Connell,* 299 *Id.* (*Wyom.*) 279; *Rehearing denied,* 3 *Id.* (2d.) 101; 35 *C. J.* 1209; 16 *R. C. L.* 559. See, also, *collation of cases in* 1 *A. L. R.* 156. This rule measures the damages naturally arising from the breach of such a contract.

The insistence is, however, that the deprivation of prospective profits was, under the known special circumstances, reasonably in the contemplation of the parties at the time of the making of the contract, as the probable consequence of the breach. It is pointed out that the lessee contemplated the operation of the two houses as one unit, and that this would permit of economies and other advantages translatable into

pecuniary profit not possible if they were widely separated; and further, that the contract called for a provision reserving to the lessor the right of cancellation of the lease, subject to the payment of $5,000 to the lessee, if canceled during the first year of the term, $3,500 if terminated during the second year, and $2,500 during the third year. But, assuming that lost profits were within the contemplation of the parties as the measure of damage, the claimed anticipated profits were not so certain and definite as to be the legally deducible consequences of the breach.

There is a well established distinction, in respect of the ascertainment of future probable profits, between a new business or venture and one in actual operation. In the first, the prospective profits are too remote, contingent and speculative to meet the legal standard of reasonable certainty; while in the second, the provable data furnished by actual experience provides the basis for an estimation of the *quantum* of such profits with a satisfactory degree of definiteness. *Cramer* v. *Grand Rapids Show Case Co.,* 223 *N. Y.* 63; 119 *N. E. Rep.* 227; 1 *A. L. R.* 154; *Neal* v. *Jefferson, supra; Narragansett Amusement Co.* v. *Riverside Park Amusement Co.,* 260 *Mass.* 265; 157 *N. E. Rep.* 532; *Witherbee* v. *Meyer, supra; Wakeman* v. *Wheeler and Wilson Manufacturing Co., supra.* In the one case, the success of the business usually depends upon a variety of circumstances, and the outcome is therefore too uncertain to provide a tangible basis for computation; while in the other, past experience has demonstrated the success of the enterprise and provides a reasonably certain basis for the calculation of plaintiff's probable loss consequent upon the breach of the contract to lease.

The instant case falls into the former category. Respondent was permitted to testify, over objection, that he operated other rooming houses in the city of Newark during the period in question, and that, based upon his "knowledge and experience in the business in the city of Newark and in that locality," the "reasonable return on the same business conducted in 22-24 [West Kinney street] would be * * * $2,500 a year." He explained that that sum represented "the gross

profits for one year;" and later he said that he was "testifying to the profits * * * made in operating 26-28 West Kinney street." The following question and answer make it quite clear that he was not estimating the anticipated profits from the operation of the building in question: "*Q.* You didn't make any estimate or any figure of what in your opinion the return on 22-24 would be, did you? *A.* I have not been operating 22-24." Moreover, there was no evidence of a need for additional housing facilities in the vicinity. The adjoining house was not operated to capacity. Respondent testified: "Our rooms are quite filled up, practically ninety per cent." This business was essentially transient in character, and fluctuated in volume.

In these circumstances, the anticipated profits were so remote, speculative and problematical as to preclude their consideration in the appraisement of the loss. They obviously did not satisfy the legal standard. Profits anticipated from a bargain take this classification when "they have reference to dependent and collateral engagements, entered into on the faith and in expectation of the performance of the principal contract. * * * But profits or advantages which are the *direct and immediate fruits* of the contract entered into between the parties stand upon a different footing," and are recoverable as the natural and proximate consequence of the breach. *Masterton* v. *Mayor, &c., of Brooklyn, 7 Hill* 61.

Respondent urges, in the alternative, that the trial judge, by his instructions, expressly limited this testimony as to lost profits to the ascertainment of "the value of the term," and there was therefore no error of substance in governing the jury in the assessment of the loss. But such is not the case. The probable earning capacity of the building as a rooming house was given to the jury as a guide for the determination of this issue: and thus the true measure of damages was rejected in favor of the theory of gains presented in the form of anticipated profits. It follows that, in the particulars mentioned, there was prejudicial error which vitiates the judgment.

Judgment reversed, and record remitted for further proceedings in conformity with this opinion.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, JJ.   13.