## THRIFT WHOLESALE, Inc., v. MALKIN-ILLION CORPORATION.

### Civil Action No. 2528.

District Court, E. D. Pennsylvania.

July 27, 1943.

Maurice Freedman and James F. Masterson, both of Philadelphia, Pa., for plaintiff.

Irving Bookstaber, of Newark, N. J., and Harold B. Ramsey, of Chester, Pa., for defendant.

BARD, District Judge.

This is an action for breach of contract. I make the following special findings of fact:

1. Plaintiff is a Pennsylvania corporation, with its principal place of business at Harrisburg, Pennsylvania.

2. Defendant is a corporation of the State of New Jersey, with its principal office in Newark, New Jersey. The amount in controversy is more than $3,000 exclusive of interest and costs.

3. J. B. Freidberg is president and secretary of the plaintiff corporation.

4. Plaintiff is and has been engaged in the wholesale confectionery, cigar, cigarette and tobacco business since 1903, and during the last eight years has operated some 600 automatic cigarette vending machines in Dauphin County, Pennsylvania and vicinity.

5. Defendant is engaged in the business of manufacturing and selling automatic cigar vending machines.

6. S. M. Malkin is president of the defendant corporation, and the other officers thereof are members of his immediate family.

7. On May 15, 1941, S. M. Malkin called on J. B. Freidberg, president of plaintiff corporation, in Harrisburg, to negotiate the sale of cigar vending machines to plaintiff.

8. On that date a written agreement for the sale of fifty cigar vending machines for $1,075 was executed in the name of plaintiff by Freidberg as president and in the name of defendant by S. M. Malkin as "representative", pursuant to which Freidberg delivered to Malkin a check for $237.50 as a down payment.

9. The agreement provided, inter alia, that delivery of the machines was to be made by the defendant immediately f.o.b. Newark, New Jersey.

10. The agreement further contained the following provision:

"This contract shall not be valid or enforceable until countersigned by the President, Vice President or Treasurer of the Malkin-Illion Corporation, at Newark, New Jersey.

"Countersigned:
"Malkin-Illion Corporation
"By ——————"

11. No other officer of the defendant corporation countersigned the agreement.

12. Within a few weeks defendant notified plaintiff that it would be unable to deliver the machines to plaintiff, and tendered back plaintiff's check.

#### Discussion.

Defendant is a manufacturer of cigar vending machines which it sells, under an arrangement with the manufacturer of Bayuk "Phillies" cigars, pursuant to contracts by which the buyer agrees to use the machines for the sale of "Phillies" cigars exclusively unless the seller is unable or fails to supply the buyer with the number of those cigars it needs for the machines. On May 15, 1941, S. M. Malkin, defendant's president, who was one of its salesmen, called on plaintiff for the purpose of selling it some of its machines under the above arrangements. Plaintiff agreed to purchase fifty of the machines for $1,075, and gave Malkin a check to defendant's order for $237.50 by way of deposit. Four copies of a printed agreement designated respectively as "original", "buyer's temporary copy," "salesman's copy" and "count-

ersigned contract" were signed by plaintiff's president and by Malkin. On a printed line which read, "Malkin-Illion Corporation By ——— Representative," Malkin affixed his signature. Beneath this appeared a statement that the contract should not be valid or enforceable until countersigned by defendant's president, vice president or treasurer at Newark, New Jersey. On the same day Malkin discovered that, shortly before the plaintiff had requested him to call on it to negotiate the sale, another dealer had been granted an exclusive agency by Bayuk Cigars, Inc. for the sale of its product in that area. He therefore sought a conference with the Bayuk firm to determine whether filling the plaintiff's order would be incompatible with the exclusive agency contract into which Bayuk had entered. Upon being advised by Bayuk that it would, defendant notified plaintiff that it would not fill plaintiff's order and tendered back plaintiff's check for the deposit.

Plaintiff refused to accept the check and demanded performance of the agreement. When defendant refused to comply, plaintiff instituted the present action, seeking to recover as damages for defendant's breach of the contract the amount of profits it would have made in the operation of the fifty cigar vending machines which it had ordered from the defendant.

The first question is whether defendant entered into a binding contract. Plaintiff contends that since Malkin was the president of defendant, which is apparently a closely held family corporation, and himself signed the contract, the provision that the contract must be countersigned by the president or treasurer of the defendant corporation was effectively complied with. Plaintiff further argues that in any event defendant's subsequent conduct constituted a waiver of this provision. These contentions are not without force, but, in view of my conclusions on another phase of this matter, I shall not pass upon them.

 Assuming that the contract was binding upon defendant, it will be noted that it called for shipment of the machines f.o.b. Newark, New Jersey. Performance by the defendant was therefore to be rendered in New Jersey, and the right to recover damages for failure to perform a contractual obligation is governed by the law of the place of performance. Restatement Conflict of Laws, §§ 335, 372. Under the New Jersey law it is held that the

prospective profits of a new business venture, as distinguished from those of a business in actual operation, are not recoverable as damages for breach of contract. The strictness with which this rule is applied in New Jersey appears from the decision of the Court of Errors and Appeals in Weiss v. Revenue Building & Loan Association, 116 N.J.L. 208, 182 A. 891, 104 A.L.R. 129, in which it was held that upon breach of an agreement to enter into a lease of a particular rooming house, prospective profits from the operation thereof did not constitute recoverable damages even though the plaintiff was engaged in the business of operating rooming houses. Said the Court at page 212 of 116 N.J.L., at page 893 of 182 A.: "There is a well-established distinction, in respect of the ascertainment of future probable profits, between a new business or venture and one in actual operation. In the first, the prospective profits are too remote, contingent, and speculative to meet the legal standard of reasonable certainty; while in the second, the provable data furnished by actual experience provides the basis for an estimation of the quantum of such profits with a satisfactory degree of definiteness. Cramer v. Grand Rapids Show Case Co., 223 N.Y. 63, 119 N.E. 227, 1 A.L.R. 154; Neal v. Jefferson [212 Mass. 517, 99 N.E. 334, 41 L.R.A.,N.S., 387, Ann.Cas.1913D, 205] supra; Narragansett Amusement Co. v. Riverside Park Amusement Co., 260 Mass. 265, 157 N.E. 532; Witherbee v. Meyer [infra]; Wakeman v. Wheeler & Wilson Mfg. Co. [101 N.Y. 205, 4 N.E. 264, 54 Am. Rep. 676] supra. In the one case, the success of the business usually depends upon a variety of circumstances, and the outcome is therefore too uncertain to provide a tangible basis for computation; while in the other, past experience has demonstrated the success of the enterprise and provides a reasonably certain basis for the calculation of plaintiff's probable loss consequent upon the breach of the contract to lease."

This rule was reiterated in Adrian v. Rabinowitz, 116 N.J.L. 586, at page 591, 186 A. 29, at page 32: " * * * evidence of possible profits during the period in question, and, by the same reasoning, losses resulting from the depreciation in value of seasonal merchandise which might have been sold, do not provide a definite and trustworthy standard. The hazards, contingencies, and uncertainties incident to the operation of a newly-established business preclude the consideration of such factors in the appraisement of the injury. They are too remote and speculative to serve as a satisfactory guide. Compare Weiss v. Revenue Building & Loan Association, supra; Cramer v. Grand Rapids Show Case Co., 223 N.Y. 63, 119 N.E. 227, 1 A.L.R. 154; Witherbee v. Meyer, 155 N.Y. 446, 50 N.E. 58; Griffin v. Colver, 16 N.Y. 489, 69 Am.Dec. 718; Pennypacker v. Jones, 106 Pa. 237; Cassidy v. Le Fevre, 45 N.Y. 562."

The same distinction between the right to recover profits of an established business and those of a new business venture is generally made. 17 C.J. 797; 25 C.J.S., Damages, § 42, p. 519.

In the case at bar plaintiff never had been engaged in the operation of cigar vending machines, although it had been engaged for a number of years in the tobacco business and in the operation of cigarette vending machines. Under the Weiss case, supra, the operation of cigar vending machines would constitute a "new business or venture" as distinguished from "one in actual operation", and accordingly, under the New Jersey law, loss of profits would not be an element of damages recoverable for breach of the contract.

Even if loss of prospective profits were recoverable under New Jersey law, I am of opinion that plaintiff's proofs have failed to establish what this loss would have been. Plaintiff's president produced a list of fifty locations from the operators of which its salesmen had allegedly procured verbal commitments to permit the installation of cigar vending machines. Plaintiff's president then offered, over the defendant's objection, opinion testimony, as an expert witness, as to the profits the cigar vending machines would have earned at these locations. He admitted, however, that he had no personal experience in the operation of cigar vending machines and that his opinion as to the number of cigars that would be sold was based upon what the operators of some fifteen or twenty stores had told him were their cigar sales from vending machines, and on the representations of the manufacturer of the machines. In the light of this admission, his testimony as to the prospective earnings of the machines at the locations for which they were intended can hardly be considered expert testimony and admissible as such as an exception to the hearsay rule.

I make the following conclusions of law:

1. The alleged contract on which this action has been brought called for delivery of the machines f.o.b. Newark, New Jersey, and hence the place of performance of defendant's promise was New Jersey.

2. The law of the place of performance of a party's obligation under a contract governs the right to recover damages and the measure of recoverable damages for his failure to perform.

3. Under New Jersey law, loss of prospective profits in a new business or venture is not an element of damages recoverable upon breach of contract.

4. Under New Jersey law, the operation of cigar vending machines by plaintiff was a new business or venture within the meaning of this rule.

5. Plaintiff has failed to show by competent evidence the amount of profits it would have made from the operation of the cigar vending machines it ordered from the defendant.

6. Judgment is hereby entered for the defendant.