85 N.J. Super. 446 (1964)
205 A.2d 74
RICHARD SHEA, PLAINTIFF-RESPONDENT,
v.
SAMUEL R. WILLARD, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 9, 1964.
Decided December 2, 1964.
*448 Before Judges CONFORD, KILKENNY and LEWIS.
Mr. Theodore D. Vreeland argued the cause for appellant.
Mr. Stephen F. Lichtenstein argued the cause for respondent.
The opinion of the court was delivered by CONFORD, S.J.A.D.
This is an action for specific performance, and alternatively for damages, by reason of breach by defendant of his written agreement of December 10, 1958 giving plaintiff an option to purchase a drug store business at a formula price at the end of a five-year period. By the same agreement defendant employed plaintiff as co-manager and pharmacist of the drug store for the stated five-year period at a salary of $140 per week. It is clear from the written agreement and the evidence that the employment and option stipulations were, respectively, the bargained-for considerations for each other. There was a voluntary increase to $180 in plaintiff's salary in March 1962.
The trial court found a wrongful breach of the option agreement by defendant, but determined that specific performance could not be awarded because of the problem resulting from an intervening long-term lease, not assignable without the landlord's consent, the landlord not being a party to the litigation. *449 It consequently awarded plaintiff damages of $24,000, but it is not clear from the oral opinion of the court whether the award rested, on the one hand, upon the difference between the stipulated payment for and fair value of the services the plaintiff rendered, or, on the other, on the difference between the stipulated purchase price and fair value of the drug store business, or both. Nor are there precise findings of fact by which the damages on either basis can be definitely estimated.
Plaintiff does not cross-appeal from the denial of specific performance.
We may summarily dispose of those aspects of defendant's appeal which challenge the determination of the court on the merits of the controversy. We have no difficulty in deciding that the parties entered into a binding option agreement and that plaintiff's unequivocal acceptance of the offer to purchase on the contract terms converted the option agreement into an enforcible bilateral agreement for sale and purchase of the property. See Friedman v. Tappan Development Corp., 22 N.J. 523 (1956). Defendant's refusal to honor his obligation under that agreement was unjustified.
The only real problem presented is as to the proper measure of damages in such a case as this and as to whether the findings of the trial court will sustain the verdict arrived at on the basis of a proper measure of damages.
Plaintiff undertook by his proofs to lay a basis for recovery both on the theory of restitution of the value of his services over and above the salary stipulated in the contract and on that of his loss of bargain in defendant's repudiation of his agreement to transfer the drug store business to plaintiff. Respecting the former, he submitted proof that in the negotiations attending the adoption of the written agreement it was recognized that he would be working for less than such services were worth because of the incentive of the purchase option. An expert testified that fair starting compensation for the services of a manager and pharmacist in such a store as this as of the time the agreement was entered into would be $225 per week and that bonuses might be added in subsequent *450 years for achieving increases in business "over a given point." Such bonuses would bring plaintiff's fair compensation to about $245 weekly in the two or three years when the gross business of the store attained about $225,000.
The contract option price formula was 25% of the gross business during the year prior to the exercise of the option. At the trial it seems to have been assumed that for purposes of computing plaintiff's damages on a loss-of-bargain basis his contractual cost was about $56,000, or 25% of the $217,607 gross business for the year 1963. However, the agreement stipulated payment of the purchase price in equal monthly installments without interest over a ten-year period. At the argument both parties agreed that, in view thereof, plaintiff's cost should be estimated at the discounted present value, as of December 10, 1963, of the seller's right to receive the $56,000 amount in equal monthly installments without interest over the ensuing ten-year period. This obviously will tend to increase the plaintiff's damages on a loss-of-bargain basis.
As for the proofs of the fair market value of the business as of the option date, the trial developed the anomalous circumstance that plaintiff's expert witness arrived at a lower valuation than did defendant's, the respective figures being $60,000 and $86,000. We will not here discuss this testimony beyond saying, contrary to defendant's argument in his brief, that in our judgment the proofs in the case as a whole afford a foundation for a factual finding of the fair market value of the business as of the option date  a finding which the trial court did not here make.
Plaintiff argues that the judgment under appeal can and should be sustained on the basis that the proofs of the fair value of his services lend support to a verdict of $24,000 as representing his damages consequent upon the default. First, however, there is no clear and express finding by the trial court that the difference between plaintiff's actual wages over the five-year period and the fair value of his services amounted to $24,000 or in excess thereof. Second, and of more importance, *451 we are of the view that such was not the appropriate measure of damages in this case.
Conceding that there was proof here that plaintiff agreed to work for defendant for less than his services were worth, he nevertheless deliberately bargained, in return therefor, only for the option to purchase the store business. His agreement to bind himself to serve defendant for five years at the specified salary is what constitutes the consideration which prevented defendant from revoking the option prior to the time for its exercise by plaintiff. But when the option was exercised, as indicated above, the relationship between the parties became transmuted into one of bilateral agreement of sale and purchase of the business. It was then as though the parties had begun their relationship with the making of that agreement. There is no good reason here why breach of that agreement by the seller should be attended by any change in the rule of damages ordinarily applicable in such cases, i.e., the difference between the fair value of the property agreed to be sold and the stipulated purchase price. Weiss v. Revenue B. & L. Assn., 116 N.J.L. 208, 210 (E. & A. 1936). That remedy will put plaintiff into presumably as good a position as if defendant had not defaulted.
It is true that where there is a total breach or repudiation by a contracting party the wronged party in many situations is allowed restitution of the value of his performance alternatively to an award of damages for the breach. 5 Corbin on Contracts (1964), § 1104, p. 558. This rule is said not to be applicable where "the broken contract is divisible into parts such that a separate part of the performance promised by the plaintiff or performed by him is, by the terms of the contract, made the agreed equivalent to be exchanged for some apportioned part of the performance promised by the defendant." Op. cit., § 1111, p. 591. To the same effect is Restatement of Contracts, § 351, subject to the qualification that the apportioned consideration has been rendered in full by the defendant or is a liquidated sum of money. In the present case, on the face of the contract, the $140 weekly salary was apportioned *452 as the agreed equivalent of the services to be rendered by plaintiff, and it has been fully paid. The stated qualification of the ordinary rule for restitution as an alternative remedy would thus seem here applicable.
However, courts always apply rules of damages flexibly to assure justice, see Zeliff v. Sabatino, 15 N.J. 70, 74 (1954), and we might well take a different view of the availability of the restitutionary remedy here, having regard to the calloused default by the defendant after plaintiff's self-sacrificing performance of his undertaking, if an ample remedy by way of damages were not here feasibly practicable. Compare the case where the value of the performance promised by the defaulting defendant cannot be ascertained. 5 Corbin, op. cit., § 1110, p. 590. Here the remedy of damages is available and substantially remedial of plaintiff's grievance. It requires but specific findings of fact by the trial court to make an accordant judgment in favor of plaintiff unassailable. These findings are: (1) the fair market value of the drug store business contracted to be sold, as of December 10, 1963; and (2) the discounted (at a reasonable rate of interest) money value of the present right, as of December 10, 1963, to receive payment of $56,000 in equal monthly installments thereafter over a ten-year period without interest. The excess of (1) over (2) will constitute plaintiff's damages in which sum he will be entitled to judgment (plus legal interest from December 10, 1963). It is preferable that the trial judge rather than we make the determination of damages since he is in a better position than this court to appraise the credibility of the witnesses he heard, particularly the experts. The trial court may take such further proofs as may in its discretion be necessary for the foregoing purposes.
Judgment affirmed as to liability of defendant; remanded for findings of fact and adjudication of damages agreeably to this opinion. Costs on this appeal to plaintiff. The supersedeas bond filed by defendant will stand as security for any judgment awarded plaintiff on the remand and for the costs of this appeal.