SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Larry Schwartz v. Nicholas Menas, Esq. (A-54/55-20) (085184)**

**Argued April 26, 2022 -- Decided August 17, 2022**

**PATTERSON, J., writing for a unanimous Court.**

In these consolidated appeals, which arise from two actions based on real estate development disputes, the Court considers whether plaintiffs Larry Schwartz and NJ 322, LLC should be barred from presenting evidence of lost profits damages under Weiss v. Revenue Building & Loan Association, 116 N.J.L. 208 (E. & A. 1936), and the "new business rule," which bars claims for lost profits by new businesses on the ground that no such claim can be proven with reasonable certainty.

In the first action, plaintiffs sued their former legal counsel, two real estate developers, and executives employed by the developers, alleging that defendants' tortious conduct deprived them of the opportunity to construct an affordable housing complex on a property in Monroe Township. Schwartz had formed NJ 322, LLC with a developer to build a market-rate rental and commercial development on the property. Plaintiffs contend that defendants arranged to have the property rezoned so that only affordable housing could be built on it, at which time the developer withdrew and Schwartz had no alternative but to sell the property.

Schwartz conceded that he had no experience with or knowledge of the requirements imposed on developers of affordable housing, but asserts that he intended to act as the property's developer. Plaintiffs' damages expert prepared a report that included his opinion on "the profits that would likely have been earned by [p]laintiffs in the event that their development goals and objectives in connection with the development of the Project had not been frustrated" by defendants' alleged conduct. The expert presented two lost profits damages models for the Monroe Township development: the profit plaintiffs would have achieved if the development had proceeded as originally planned, and the profit had plaintiffs been the ones to construct the affordable housing project that was actually built. The expert's report did not acknowledge that Schwartz had never been involved with a residential development or built housing of any kind. Based on the new business rule, the trial court granted defendants' motion to bar testimony by plaintiffs' expert.

1

In the second action, Schwartz sued his former counsel for legal malpractice and breach of contract arising from the proposed development of two properties in Egg Harbor Township. Schwartz served an expert report presenting three lost profits damages models that varied according to whether and how much of the property would be age-restricted. The report did not acknowledge that Schwartz had never developed residential housing, but rather assumed that Schwartz would have obtained financing and would have partnered with experienced developers to construct the housing. The trial court found that Schwartz's Egg Harbor venture was a new business and barred the expert opinion pursuant to the new business rule.

The Appellate Division affirmed in both cases. The court considered itself constrained to follow Weiss and apply the new business rule; it also held that, even if the new business rule did not apply, the expert's opinions were too speculative to meet the standard of reasonable certainty required for lost profits damages. The Court granted certification. 246 N.J. 139 (2021); 246 N.J. 145 (2021).

**HELD:** The Court joins the majority of jurisdictions that reject a per se ban on claims by new businesses for lost profits damages, and it declines to follow Weiss to the extent that it bars any claim by a new business for such damages. Claims for lost profits damages are governed by the standard of reasonable certainty and require a fact-sensitive analysis. Because it is substantially more difficult for a new business to establish lost profits damages with reasonable certainty, a trial court should carefully scrutinize a new business's claim that a defendant's tortious conduct or breach of contract prevented it from profiting from an enterprise in which it has no experience and should bar that claim unless it can be proven with reasonable certainty. The Court remands these matters so that the trial court may decide defendants' motions in accordance with the proper standard.

1. Weiss involved a lease dispute in which the plaintiff alleged the defendant's breach deprived him of the opportunity to operate two rooming houses. 116 N.J.L. at 209. At trial, the plaintiff was permitted to estimate the profit that he would have earned from the defendant's buildings based on the profit he had earned by operating rooming houses at other locations. Id. at 213-23. Observing that damages for breach of contract "must be the reasonably certain and definite consequences of the breach," the Court of Errors and Appeals noted that, in new businesses, "the prospective profits are too remote, contingent and speculative to meet the legal standard of reasonable certainty." Id. at 210, 212. The Weiss court found it was error in that case to consider the proposed rooming house's anticipated profits, which were "remote, speculative and problematical." Id. at 213. The Court has not previously considered whether a plaintiff's status as a new business constitutes an important factor in determining whether lost profits damages may be proven with reasonable certainty, or whether it bars such damages entirely. Prior case law has thus left unresolved the question raised by this appeal. (pp. 17-21)

2

2.  In the decades since the Court of Errors & Appeals decided Weiss, a majority of courts in other jurisdictions have recognized that, although it is difficult for a new business to meet the standard of reasonable certainty, a per se ban on any claims for lost profits damages by a new business is unwarranted.  Nonetheless, abrogation of the new business rule does not produce a free-for-all.  Under New York law, the new business rule is not a per se rule forbidding the award of lost profits damages to new businesses, but rather an evidentiary rule that creates a higher level of proof needed to achieve reasonable certainty as to the amount of damages.  Illinois law similarly imposes a high standard on new business claims for lost profits damages but does not bar such claims entirely.  Recognition that it is difficult for a new business to prove lost profits claims is consistent with the approach of the Restatement (Second) of Contracts, which recognizes that it is "more difficult" but still possible to prove loss of profits for new businesses "with the aid of expert testimony, economic and financial data, market surveys and analyses, business records of similar enterprises, and the like."  See § 352 & cmt. b.  Most courts that have considered the new business rule reject a per se bar for lost profits claims by new businesses and instead carefully scrutinize such claims, treating a new business's inexperience as an important factor in the reasonable certainty standard.  (pp. 22-25)

3.  Reiterating the general rule under New Jersey law that lost profits may be recoverable if they can be established with a reasonable degree of certainty, but anticipated profits that are remote, uncertain or speculative are not recoverable, the Court concurs with the majority of courts that reject a per se rule barring any new business's claim for lost profits damages.  To the extent that Weiss can be read to adopt such a per se bar, the Court departs from the test prescribed in that case.  The Court does not view a new business to be in the same position as an established business with respect to damages claims, however.  Consistent with the Restatement and the New York and Illinois decisions discussed in the opinion, the Court recognizes that it is substantially more difficult for a new business than for an experienced business to prove lost profits with reasonable certainty.  A trial court should carefully scrutinize a new business's claim that, but for the conduct of the defendant, it would have gained substantial profit in a venture in which it had no experience.  If a new business seeks lost profits that are remote, uncertain, or speculative, the trial court should bar the evidence supporting that claim and enter summary judgment.  The trial court here applied a per se ban on lost profits claims by a new business pursuant to Weiss.  The Court remands so that these matters can be decided under the correct standard and provides relevant guidance.  (pp. 25-28)

**REVERSED AND REMANDED to the trial court.**

**CHIEF JUSTICE RABNER; JUSTICES SOLOMON and PIERRE-LOUIS; and JUDGE FUENTES (temporarily assigned) join in JUSTICE PATTERSON's opinion.**

3

SUPREME COURT OF NEW JERSEY

A-54/55 September Term 2020

085184

Larry Schwartz and
NJ 322, LLC,

Plaintiffs-Appellants,

v.

Nicholas Menas, Esq.,
Cooper, Levenson, April,
Niedelman & Wagenheim, PA,
Eric Ford and Pulte Homes,

Defendants-Respondents,

and

Brad Ingerman and MBI
Development Company, Inc.,

Defendants.

Larry Schwartz,

Plaintiff-Appellant,

v.

Nicholas T. Menas, Esq. and
Cooper, Levenson, April,
Niedelman & Wagenheim, PA,

Defendants-Respondents.

1

On certification to the Superior Court,
Appellate Division.

Argued
April 26, 2022

Decided
August 17, 2022

Bruce D. Greenberg argued the cause for appellants (Lite DePalma Greenberg and De Pierro Radding, attorneys; Bruce D. Greenberg, Jonathan M. Carrillo, Giovanni De Pierro, Alberico De Pierro, and Davide De Pierro, on the briefs).

Trevor J. Cooney argued the cause for respondents Eric Ford and Pulte Homes (Archer & Greiner, attorneys; Trevor J. Cooney and Andrew T. Fede, on the brief).

John L. Slimm argued the cause for respondents Nicholas Menas, Esq. and Cooper, Levenson, April, Niedelman & Wagenheim, PA (Marshall, Dennehey, Warner, Coleman & Goggin and Cooper Levenson, attorneys; John L. Slimm, Jeremy J. Zacharias, and Fredric L. Shenkman, on the briefs).

JUSTICE PATTERSON delivered the opinion of the Court.

These consolidated appeals arise from two actions. In the first, plaintiffs Larry Schwartz and NJ 322, LLC sued their former legal counsel, two real estate developers, and executives employed by the developers, alleging that the defendants' tortious conduct deprived plaintiffs of the opportunity to construct an affordable housing complex. In the second, Schwartz sued his former counsel for legal malpractice and breach of contract arising from another

2

proposed residential development. It is undisputed that neither Schwartz nor NJ 322 had ever financed or built a residential development before they sought to construct the housing at issue.

In both cases, defendants moved to bar the testimony of plaintiffs' damages expert on the ground that plaintiffs had no experience in residential construction and thus were not entitled to seek lost profits damages. Citing Weiss v. Revenue Building & Loan Association, 116 N.J.L. 208 (E. & A. 1936), defendants argued that New Jersey courts apply the "new business rule," which imposes a per se ban on a new business's claims for lost profits on the ground that no such claim can be proven with reasonable certainty.

The trial court deemed the real estate ventures at issue in both cases to constitute new businesses, barred the testimony of plaintiffs' expert on damages, and granted summary judgment to defendants. The Appellate Division affirmed the trial court's determinations. We granted plaintiffs' petitions for certification.

We join the majority of jurisdictions that reject a per se ban on claims by new businesses for lost profits damages, and we decline to follow Weiss to the extent that it bars any claim by a new business for such damages. Claims for lost profits damages are governed by the standard of reasonable certainty. A

3

trial court should undertake a fact-sensitive analysis of the evidence offered by a new business when it determines a motion to bar such a claim.

We recognize, however, that it is substantially more difficult for a new business to establish lost profits damages with reasonable certainty than it is for an established business to do so. See Restatement (Second) of Contracts § 352, cmt. b (Am. L. Inst. 1981). A trial court should carefully scrutinize a new business's claim that a defendant's tortious conduct or breach of contract prevented it from profiting from an enterprise in which it has no experience and should bar that claim unless it can be proven with reasonable certainty.

So that the trial court may decide defendants' motions to bar plaintiffs' evidence of lost profits damages and their motions for summary judgment in accordance with the proper standard, we reverse the Appellate Division's determination and remand these matters for further proceedings.

I.

A.

Schwartz has owned and operated a dry cleaning business on Staten Island for more than twenty years. He testified that the dry cleaning business is the only business he has ever owned, that he is not certified in any professional discipline, and that he has never taken any courses on real estate, land development, or finance. When asked to describe his real estate

4

experience, Schwartz testified that he purchased his own home, that he bought and rehabilitated ten homes in Newark, and that he inherited and sold a small commercial building. Schwartz admitted that he had never acted "as a developer."

In 2006, defendant Nicholas Menas, then a member of defendant Cooper, Levenson, April, Niedelman & Wagenheim, P.A., alerted a developer whom Schwartz knew, Salvatore Surace, about a property in Monroe Township. Schwartz claims that Menas proposed that Surace and Schwartz develop the property as a market-rate rental and commercial development and then sell it to defendant Pulte Homes. Surace and Schwartz formed NJ 322, LLC, a limited liability company, and NJ 322 acquired the property.

Schwartz and NJ 322 allege that in the course of multiple transactions over several years, Menas, Cooper Levenson, Pulte Homes, and Pulte Homes's Vice President, defendant Eric Ford, deprived them of the profits that they would otherwise have gained by developing the property. They contend that defendants arranged to have NJ 322's property rezoned so that only affordable housing could be built on it, thus enabling Pulte Homes to develop a different property in Monroe Township with little or no affordable housing obligation. Plaintiffs assert that as a result of the rezoning, Surace withdrew from the project, leaving Schwartz as the sole member of NJ 322.

5

As Schwartz conceded, he had no experience with or knowledge of the requirements imposed on developers of affordable housing by the Fair Housing Act, N.J.S.A. 52:27D-301 to -329. He admitted that when the Monroe Township property was rezoned for affordable housing, he had never heard of the Council on Affordable Housing (COAH). See N.J.S.A. 52:27D-304(a) (defining COAH's role under the Fair Housing Act). He nonetheless asserts that he intended to act as the affordable housing project's developer.

According to Schwartz, defendants impeded his contemplated project so that defendant MBI Development Company, Inc. and another developer could acquire the property from NJ 322 and build the proposed affordable housing. Schwartz contended that he had no alternative but to sell the property to the experienced developers. MBI eventually developed a 132-unit affordable housing complex on the property.

Defendants deny plaintiffs' allegations. They point to evidence that Monroe Township rezoned the property owned by NJ 322 to meet its affordable housing obligation under the Fair Housing Act, not at defendants' behest. Defendants assert that Schwartz and NJ 322, with neither the experience nor the resources to construct an affordable housing development, nonetheless gained a substantial profit from the sale of the Monroe Township Property and suffered no lost profits as a result of any conduct by defendants.

6

In 2009, Schwartz became involved in the proposed development of two properties in Egg Harbor Township. He testified that Menas apprised him of the opportunity to invest in the two properties and formed LLCs, with Schwartz as the managing member, to purchase the properties.

Schwartz claims that Menas advised him to abandon a previously approved age-restricted development proposed for one of the Egg Harbor properties in favor of a different project that required new approvals, and that Menas persuaded him to accept another individual as an additional member of the LLCs and the financing source for the proposed projects. Schwartz maintains that, unbeknownst to him, Menas arranged for the other member of the LLCs to replace Schwartz as the managing member, and that he was thus deprived of the opportunity to develop the two properties. He also contends that Menas negligently advised him on several aspects of the proposed Egg Harbor Township projects.

According to Menas and Cooper Levenson, Schwartz had neither the expertise nor the funding to purchase two undeveloped properties, secure the necessary permits, retain contractors to build the housing, and construct homes, roads, and infrastructure. They assert that they had no role in the failure of Schwartz's planned development of those properties.

B.

1.

In the first action, Schwartz and NJ 322 sued Menas, Cooper Levenson, Pulte Homes, and Ford for damages arising from the Monroe Township affordable housing project.[1] They asserted claims for legal malpractice, violations of the Rules of Professional Conduct, and breach of contract against Menas and Cooper Levenson, a fraud claim against Menas, and claims for tortious interference with contract and prospective economic advantage against all defendants.

Schwartz and NJ 322 named as their damages expert Dr. Robert Powell, Jr., who opined on "the profits that would likely have been earned by [p]laintiffs in the event that their development goals and objectives in connection with the development of the Project had not been frustrated" by defendants' alleged conduct.

In his expert report, Powell presented two lost profits damages models for the Monroe Township development. First, Powell calculated that had Schwartz and NJ 322 constructed a 100-unit mixed-use market-rate development as Schwartz originally contemplated, their profit would have

---

[1] Plaintiffs also named MBI and its President, Brad Ingerman, as defendants in the amended complaint, but voluntarily dismissed their claims against those defendants without prejudice.

been $5,135,804, and that Schwartz's personal share of that profit would have been $2,567,902. Powell opined that this calculation reflected the profits that "could reasonably have been achieved by a development group led by [Schwartz]," and that it was based on profit margins "consistent with customary profit results for builders of this type of product."

Second, Powell opined that had Schwartz and NJ 322 constructed the 132-unit affordable housing project that was built on the Monroe Township property, their profit would have been $8,167,416, and Schwartz's personal share of that profit would have been between $4,900,450 and $8,167,416, depending on whether he formed a joint venture with another developer or developed the housing alone.

Powell did not acknowledge in his report that Schwartz had never been involved with a residential development or built housing of any kind.

After the trial court denied defendants' motions to strike plaintiffs' damages claims, their motions for summary judgment, and their motions for reconsideration, defendants moved to bar Powell's lost profits damages testimony on the ground that the new business rule barred plaintiffs' lost profits damages claim. They argued that Schwartz had no experience in the development of affordable housing and that Powell's suggestion that Schwartz would have become affiliated with an experienced developer of affordable

9

housing was mere speculation. Schwartz and NJ 322 asserted that Schwartz's prior rehabilitation of homes provided him with relevant experience, and that Schwartz's attempt to construct affordable housing in Monroe Township constituted an expansion of his existing real estate business, not a new business.

Based on the new business rule, the trial court granted defendants' motion to bar Powell's expert testimony.[2] It rejected plaintiffs' contention that their residential development business was an expansion of Schwartz's prior home rehabilitation projects. The court relied on Schwartz's admission that he had no prior experience in a project such as the one he sought to undertake and noted that, although Schwartz claimed he would find a partner experienced in the development of residential housing, he never did. The trial court viewed Powell's opinion to be speculative, given the expert's reliance on "various scenarios of what the profits would be depending on what kind of development was done." The court denied plaintiffs' motion for reconsideration.

---

[2] As the trial court confirmed during the hearing on defendants' motion, defendants did not challenge the reliability of Powell's expert methodology pursuant to N.J.R.E. 702 or 703. Accordingly, the trial court did not conduct a hearing under N.J.R.E. 104 or rule on the expert's methodology. See generally In re Accutane Litig., 234 N.J. 340, 388-90 (2018); Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. on N.J.R.E. 702 (2022).

In light of its decision barring plaintiffs' lost profits claims, and the undisputed fact that Schwartz made a profit on the sale of the Monroe Township Property and could assert no claim for out-of-pocket damages, the trial court granted defendants' summary judgment motions and dismissed plaintiffs' complaint with prejudice.

2.

In the second action, Schwartz asserted claims for legal malpractice, breach of the Rules of Professional Conduct, and breach of contract against Menas and Cooper Levenson arising from the Egg Harbor Township project.

Following fact discovery, Schwartz served a lost profits damages expert's report by Powell regarding one of the Egg Harbor Township properties. Powell presented three lost profits damages models for the property. He opined that had Schwartz developed 208 non-age-restricted condominium units for sale on the Egg Harbor property, he would have made a profit of $2,270,525. Powell further estimated that had Schwartz developed 208 non-age-restricted rental units on the property that would be held for ten years and then sold with no age restriction, he would have earned a profit over that ten-year period with a present value of $3,579,724. Finally, Powell opined that had Schwartz constructed 208 condominium units for sale that

were age-restricted for residents at least fifty-five years old, he would have made a profit in the amount of $1,907,241.

Consistent with his expert's report on the Monroe Township matter, Powell did not acknowledge in his report on the Egg Harbor project that Schwartz had never developed residential housing. He assumed for purposes of his analysis that Schwartz would have obtained financing and would have partnered with experienced developers to construct the housing.

After the trial court denied their motions for summary judgment without prejudice, defendants moved to bar Powell's expert testimony on lost profits damages for the Egg Harbor project. Schwartz opposed the motion, contending that Powell's damages report was not speculative and that the expert took into account the potential involvement of other investors in the Egg Harbor project.

The trial court found that Schwartz's Egg Harbor venture was a new business, not an expansion of an existing business. It held that Powell's assumption that Schwartz would have partnered with experienced developers was unfounded and that Powell's opinions were speculative. The court barred Powell's expert opinion pursuant to the new business rule.

Defendants filed a motion for summary judgment, and the trial court granted the motion and dismissed the complaint with prejudice.

12

C.

Schwartz and NJ 322 appealed the trial court's judgment in the Monroe Township case. Schwartz appealed the trial court's judgment in the Egg Harbor case. The Appellate Division consolidated the appeals.

Relying on RSB Laboratory Services Inc. v. BSI, Corp., 368 N.J. Super. 540, 556 (App. Div. 2004), the Appellate Division observed that the past experience and success of a plaintiff's ongoing business provides a reasonable basis for a computation of lost profits. However, the court viewed Weiss, 116 N.J.L. at 212, to stand for the proposition that a new business's prospective profits are too remote and speculative to be proven with reasonable certainty. The Appellate Division acknowledged that a majority of jurisdictions that have considered the issue have rejected the new business rule in favor of a rule that allows a new business to recover lost profits when they can be proven with reasonable certainty. However, the appellate court considered itself constrained to follow Weiss and apply the new business rule.

The Appellate Division found no abuse of discretion in the trial court's determination that Schwartz's residential development ventures constituted a new business. It therefore agreed with the trial court that Powell's expert opinion on lost profits damages in both cases was barred by the new business rule.

13

The Appellate Division held that even if the new business rule did not apply, Powell's opinions were too speculative to meet the standard of reasonable certainty, given the expert's failure to analyze the impact of Schwartz's inexperience on his prospective profits and his reliance on successful projects conducted by experienced developers in calculating those profits.

The Appellate Division accordingly affirmed the trial court's judgment in both cases.

D.

We granted plaintiffs' petitions for certification, in which they raised the question whether New Jersey adheres to the new business rule. 246 N.J. 139 (2021); 246 N.J. 145 (2021).

II.

A.

Schwartz and NJ 322 urge the Court to reject Weiss and decline to impose a per se bar on lost profits damages claims by new businesses. They argue that Powell's opinions on lost profits damages are not speculative because Schwartz took significant steps to be in a position to develop the Monroe Township and Egg Harbor properties. Schwartz and NJ 322 assert

14

that they have established lost profits damages in both cases with reasonable certainty.

## B.

Defendants Menas and Cooper Levenson argue that the new business rule is fair and practical because the success of a new business venture is too uncertain to support a claim for lost profits. They assert that the trial court and Appellate Division properly concluded that Schwartz's real estate projects were new businesses and that Powell's opinions were premised on speculation.

## C.

Defendants Ford and Pulte Homes assert that the new business rule governs plaintiffs' claims arising from the Monroe Township project. They assert that Powell's opinion regarding that project, which ignores Schwartz's inexperience in the construction of affordable housing, does not establish lost profits damages with reasonable certainty.

## III.

## A.

In each of the cases before the Court, this appeal arises from two determinations by the trial court: the grant of defendants' motion to bar lost profits damages evidence and the grant of defendants' motion for summary judgment.

When "a trial court is 'confronted with an evidence determination precedent to ruling on a summary judgment motion,' it 'squarely must address the evidence decision first.'" Townsend v. Pierre, 221 N.J. 36, 53 (2015) (quoting Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 384-85 (2010)). "Appellate review . . . proceeds in the same sequence, with the evidentiary issue resolved first, followed by the summary judgment determination of the trial court." Ibid. (quoting Est. of Hanges, 202 N.J. at 385).

The trial court's evidentiary determination is reviewed for abuse of discretion. Rodriguez v. Wal-Mart Stores, Inc., 237 N.J. 35, 57 (2019) ("[E]videntiary decisions are reviewed under the abuse of discretion standard because, from its genesis, the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion." (quoting Est. of Hanges, 202 N.J. at 383-84)). The court's grant or denial of summary judgment is reviewed de novo, subject to the Rule 4:46-2 standard that governs a trial court's ruling on a summary judgment motion. Nicholas v. Mynster, 213 N.J. 463, 477-78 (2013); accord R. 4:46-2(c).

We review de novo the Appellate Division's legal determination that under New Jersey law, the new business rule bars any new business's claim for lost profits damages. Mynster, 213 N.J. at 478.

16

B.

1.

The decision in <u>Weiss</u> arose from a dispute over the lease of a residential property. 116 N.J.L. at 209-10. The plaintiff had leased a building from the defendant and then exercised his option to lease an adjoining building, intending to operate rooming houses in the two buildings. <u>Id.</u> at 209. However, the defendant declined to lease the second building to the plaintiff, and the plaintiff filed a complaint alleging breach of contract. <u>Ibid.</u>

At trial, the plaintiff admitted that he had never operated a rooming house where the buildings were located, and he presented "no evidence of a need for additional housing facilities in the vicinity." <u>Id.</u> at 213. Over the defendant's objection, however, the plaintiff was permitted to estimate the profit that he would have earned had he operated a rooming house in the disputed buildings, based on the profit he had earned by operating rooming houses at other locations. <u>Id.</u> at 212-13.

The Court of Errors and Appeals observed that, although damages for breach of contract generally reflect the amount of loss, such damages "must be the reasonably certain and definite consequences of the breach, as distinguished from mere quantitative uncertainty." <u>Id.</u> at 210; <u>see also</u> <u>Feldman v. Jacob Branfman & Son, Inc.</u>, 111 N.J.L. 37, 41-42 (E. & A. 1933)

17

(stating the general rule that lost profits may be recovered "if there are any criteria by which probable profits can be estimated with reasonable certainty").

Addressing the question whether the lost profits claimed in Weiss were too speculative to meet the test of reasonable certainty, the Court of Errors and Appeals noted

> a well established distinction, in respect of the ascertainment of future probable profits, between a new business or venture and one in actual operation. In the first, the prospective profits are too remote, contingent and speculative to meet the legal standard of reasonable certainty; while in the second, the provable data furnished by actual experience provides the basis for an estimation of the quantum of such profits with a satisfactory degree of definiteness. In the one case, the success of the business usually depends upon a variety of circumstances, and the outcome is therefore too uncertain to provide a tangible basis for computation; while in the other, past experience has demonstrated the success of the enterprise and provides a reasonably certain basis for the calculation of plaintiff's probable loss consequent upon the breach of the contract to lease.
>
> [116 N.J.L. at 212 (citations omitted).]

The Court of Errors and Appeals viewed the case before it to be in "the former category," given the plaintiff's lack of experience operating a rooming house at the location at issue. Id. at 212-13. It reversed the trial court's judgment in plaintiff's favor and remanded for further proceedings because it considered the proposed rooming house's anticipated profits to be "so remote,

18

speculative and problematical as to preclude their consideration in the appraisement of the loss." Id. at 213. The court reasoned that

> [p]rofits anticipated from a bargain take this classification when "they have reference to dependent and collateral engagements, entered into on the faith and in expectation of the performance of the principal contract. . . . But profits or advantages which are the direct and immediate fruits of the contract entered into between the parties stand upon a different footing," and are recoverable as the natural and proximate consequence of the breach.
>
> [Ibid. (omission in original) (quoting Masterton & Smith v. Brooklyn, 7 Hill 61 (1945)).]

See also Adrian v. Rabinowitz, 116 N.J.L. 586, 592 (1936) (citing Weiss for the proposition that "[t]he hazards, contingencies and uncertainties incident to the operation of a newly established business preclude the consideration" of lost profits or losses resulting from the depreciation of seasonal merchandise because such considerations "are too remote and speculative to serve as a satisfactory guide").

This Court has not previously considered whether a plaintiff's status as a new business constitutes an important factor in determining whether lost profits damages may be proven with reasonable certainty, or whether it bars such damages entirely. In Perini Corp. v. Greate Bay Hotel & Casino, Inc., a majority of the Court confirmed an arbitration award including lost profits damages in favor of a casino against a general contractor hired to renovate its

19

property. 129 N.J. 479, 509-10 (1992), <u>overruled in other part by</u> <u>Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc.</u>, 135 N.J. 349 (1994). There, the Court determined that the arbitrators did not act in manifest disregard of the law when they awarded lost profits based on the casino's loss of the use of its property during the renovation project, notwithstanding the contractor's argument that the casino during the renovation was a new business not entitled to such damages under New Jersey law. <u>Ibid.</u> This Court did not decide in <u>Perini</u> whether the casino claiming the damages constituted a new business; it noted that even if the casino were deemed to be a new business, "the trend in recent cases has been to award lost profits for a new business when they can be proved with reasonable certainty." <u>Id.</u> at 509.

Notwithstanding that observation, this Court's decision in <u>Perini</u> did not resolve the question whether there is a per se ban on lost profits claims by new businesses under New Jersey law. As the Appellate Division noted,

> [w]hile the arguments for abandonment of the "new business rule" appear to be persuasive, those arguments are not supported by a majority opinion in the Supreme Court; rather, they appear only in the plurality opinion in <u>Perini</u>. That is not a sufficient basis for us to say that <u>Perini</u>, which only involved arbitration and was itself overruled on other grounds in [<u>Tretina</u>], clearly undermined the authority of <u>Weiss</u>.
>
> [<u>Bell Atl. Network Servs., Inc. v. P.M. Video Corp.</u>, 322 N.J. Super. 74, 99-100 (App. Div. 1999).]

20

In <u>RSB</u>, the Appellate Division stated that "[t]he inflexible 'bright line'" of the rule stated in <u>Weiss</u> "runs directly counter to both the national trend and to modern accounting practices." 368 N.J. Super. at 560. It held, however, that as an intermediate appellate court it was "constrained to conclude that New Jersey continues to follow a minority of states that adhere to the new business rule." <u>Id.</u> at 558, 560.[3]

Accordingly, our prior case law left unresolved the question raised by this appeal.

2.

In the decades since the Court of Errors and Appeals decided <u>Weiss</u>, appellate courts in other jurisdictions have considered the question whether a new business can ever prove lost profits damages with reasonable certainty.

A majority of courts in our sister states that have resolved the issue recognize that, although it is difficult for a new business to meet the standard

---

[3] In two decisions, the Court of Appeals for the Third Circuit suggested that New Jersey does not apply a per se ban on lost profits claims by a new business. In <u>In re Merritt Logan, Inc.</u>, the Third Circuit predicted that "New Jersey would no longer follow a per se rule precluding all new businesses from recovering any damages for lost profits," noting that "[t]he New Jersey cases that initially set forth the new business rule are more than fifty years old, and the New Jersey Supreme Court has not had recent occasion to consider the rule." 901 F.2d 349, 357 (3d Cir. 1990). And in <u>Lightning Lube, Inc. v. Witco, Inc.</u>, the Third Circuit viewed this Court's plurality opinion in <u>Perini</u> to signal that "New Jersey no longer adheres to its 'new business rule.'" 4 F.3d 1153, 1176-78 (3d Cir. 1993).

21

of reasonable certainty, a per se ban on any claims for lost profits damages by a new business is unwarranted.  See, e.g., Leoni v. Bemis Co., 255 N.W.2d 824, 826 (Minn. 1977) ("Although the law recognizes that it is more difficult to prove loss of prospective profits to a new business than to an established one, the law does not hold that it may not be done."); Pauline's Chicken Villa, Inc. v. KFC Corp., 701 S.W.2d 399, 401 (Ky. 1985) ("[T]he test is not whether the business is a new or unestablished one, . . . but whether damages in the nature of lost profits may be established with reasonable certainty."); Super Valu Stores, Inc. v. Peterson, 506 So. 2d 317, 327 (Ala. 1987) (noting that, under state law, the anticipated profits of a new business are recoverable if proven with reasonable certainty); Welch v. U.S. Bancorp Realty and Mortg. Tr., 596 P.2d 947, 963 (Or. 1979) ("[T]he court should intervene only when it can say that the evidence is clearly insufficient to establish the claim of lost profits."); Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ins. Co. of N. Am., 955 S.W.2d 120, 132 (Tex. App. 1997) (holding that Texas case law is in line with the vast majority of jurisdictions in rejecting the "new business rule" as a per se bar on lost profits damages).[4]

---

[4]  Georgia courts continue to apply a per se rule barring lost profits claims by new businesses.  See Interstate Dev. Servs. of Lake Park, Georgia, Inc. v. Patel, 463 S.E.2d 516, 517 (Ga. Ct. App. 1995) (holding that "[a] business owner may recover lost profits only if the business has a proven track record of profitability" and that "the jury is not permitted to speculate as to what the

As Judge Posner noted, "[s]tates that have rejected the 'new business' rule are content to control the award of damages for lost profits by means of a standard -- damages may not be awarded on the basis of wild conjecture, they must be proved to a reasonable certainty." Mindgames, Inc. v. W. Publ'g Co., 218 F.3d 652, 657 (7th Cir. 2000). Nonetheless, "[a]brogation of the 'new business' rule does not produce a free-for-all"; the business's inexperience "enters into judicial consideration of the damages claim not as a rule but as a factor in applying the standard." Id. at 658.

Under New York law, "the new business rule is not a per se rule forbidding the award of lost profits damages to new businesses, but rather an evidentiary rule that creates a higher 'level of proof needed to achieve reasonable certainty as to the amount of damages.'" Int'l Telepassport Corp. v. USFI, Inc., 89 F.3d 82, 86 (2d Cir. 1996) (quoting Travellers Int'l, A.G. v. Trans World Airlines, 41 F.3d 1570, 1579 (2d Cir. 1994)); see also Blinds to Go (U.S.) Inc., v. Times Plaza Dev., L.P., 931 N.Y.S.2d 105, 108 (App. Div. 2011) (noting that "[i]n the case of a 'new business,' there generally 'does not exist a reasonable basis of experience upon which to estimate lost profits with the requisite degree of reasonable certainty,'" but that "there is no per se rule

_____

allegedly lost profits might have been"); accord EZ Green Assocs., LLC v. Ga.-Pac. Corp., 770 S.E.2d 273, 277 (Ga. Ct. App. 2015).

23

barring new enterprises from recovering lost profits, so long as lost profits may be established with reasonable certainty") (quoting Kenford Co. v. County of Erie, 493 N.E.2d 234, 235 (N.Y. 1986)).

Illinois law similarly imposes a high standard on new business claims for lost profits damages but does not bar such claims entirely. Although "[u]nder Illinois law, a new business generally has no right to recover lost profits," Stuart Park Assocs. Ltd. P'ship v. Ameritech Pension Tr., 51 F.3d 1319, 1328 (7th Cir. 1995), the Supreme Court of Illinois has made clear that "[t]here is no inviolate rule that a new business can never prove lost profits," Tri-G, Inc. v. Burke, Bosselman & Weaver, 856 N.E.2d 389, 407 (Ill. 2006).

Those courts' recognition that it is difficult for a new business to prove lost profits claims is consistent with the approach of the Restatement (Second) of Contracts § 352. The Restatement states the general rule that "[d]amages are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty." Ibid. As the commentary to the Restatement notes, there is a sharp distinction between an established business and a new business with respect to such claims.

> If the breach prevents the injured party from carrying on a well-established business, the resulting loss of profits can often be proved with sufficient certainty. Evidence of past performance will form the basis for a reasonable prediction as to the future. . . . However, if the business is a new one or if it is a speculative one

24

that is subject to great fluctuations in volume, costs or prices, proof will be more difficult. Nevertheless, damages may be established with reasonable certainty with the aid of expert testimony, economic and financial data, market surveys and analyses, business records of similar enterprises, and the like.

[Id. § 352, cmt. b.]

Accordingly, most courts that have considered the new business rule reject a per se bar for lost profits claims by new businesses and instead carefully scrutinize such claims, treating a new business's inexperience as an important factor in the reasonable certainty standard.

C.

We reiterate the general rule that under New Jersey law, "[l]ost profits may be recoverable if they can be established with a 'reasonable degree of certainty,'" but "[a]nticipated profits that are remote, uncertain or speculative . . . are not recoverable." Passaic Valley Sewerage Comm'rs v. St. Paul Fire & Marine Ins. Co., 206 N.J. 596, 609-10 (2011) (quoting Perth Amboy Iron Works, Inc. v. Am. Home Assurance Co., 226 N.J. Super. 200, 224 (App. Div. 1988)).

Applying that principle, we concur with the majority of courts that reject a per se rule barring any new business's claim for lost profits damages, and decline to follow the new business rule. See RSB, 368 N.J. Super. at 559; Leoni, 255 N.W.2d at 826; Welch, 596 P.2d at 964. We reaffirm that a trial

25

judge must conduct a case-specific inquiry when deciding a motion to admit or bar a category of evidence. See, e.g., Rodriguez, 237 N.J. at 58 (noting the trial court's obligation to conduct "a fact-specific evaluation of the evidence in the setting of the individual case"); State v. Nantambu, 221 N.J. 390, 395 (2015) (stating that the decision whether to admit or deny evidence "is a highly fact-sensitive analysis"). To the extent that Weiss can be read to adopt a per se bar on all lost profits damages claims by new businesses, we depart from the test prescribed by the Court of Errors and Appeals in that case. See 116 N.J.L. at 212.

We do not view a new business to be in the same position as an established business with respect to such damages claims, however. Consistent with the Restatement and the New York and Illinois decisions, we recognize that it is substantially more difficult for a new business than for an experienced business to prove lost profits damages with reasonable certainty. See Restatement § 352, cmt. b; Blinds to Go, 931 N.Y.S.2d at 108 ; Tri-G, 856 N.E.2d at 407.

In its role as gatekeeper, a trial court should carefully scrutinize a new business's claim that, but for the conduct of the defendant, it would have gained substantial profit in a venture in which it had no experience. If a new business seeks lost profits that are remote, uncertain, or speculative, the trial

26

court should bar the evidence supporting that claim and should enter summary judgment pursuant to Rule 4:46-2.

D.

In these appeals, the trial court applied a per se ban on lost profits claims by a new business pursuant to Weiss, and the Appellate Division affirmed on similar grounds. Because it considered itself constrained by Weiss, the trial court had no opportunity to conduct a fact-sensitive analysis of the evidence and decide whether plaintiffs can prove lost profits damages with reasonable certainty.

We concur with the trial court and the Appellate Division that the development projects that gave rise to both cases constituted new businesses. Nonetheless, so that these matters can be decided under the correct standard, we reverse the Appellate Division's decision and remand these matters to the trial court for consideration of defendants' motions to bar plaintiffs' proofs of lost profits damages and for summary judgment. We make no suggestion that the lost profits proofs presented to the trial court in either case meet the standard of reasonable certainty; we remand solely for the purpose of ensuring that the trial court evaluates plaintiffs' lost profits claims in accordance with the governing test.

27

If the trial court determines that plaintiffs' lost profits evidence is sufficient to establish their claim for damages with reasonable certainty despite plaintiffs' inexperience in developing housing, it should deny defendants' motions to bar the evidence and for summary judgment. If it does not view plaintiffs' proofs to meet that test, it should grant defendants' motions and dismiss the complaints.

## IV.

The judgment of the Appellate Division is reversed, and the matter is remanded to the trial court for further proceedings in accordance with this opinion.


CHIEF JUSTICE RABNER; JUSTICES SOLOMON and PIERRE-LOUIS; and JUDGE FUENTES (temporarily assigned) join in JUSTICE PATTERSON's opinion.